UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

HOLLY GREGORY,
MATTHEW POTTER, and                     No. 7:14-CV-33 (TJM/ATB)
ASTRID HALTEN,
obo themselves, and  others similarly situated,

                             Plaintiffs,

       v.

STEWART'S SHOPS CORP.,

                             Defendant.

RYAN M. FINN, ESQ., *et al.*, for Plaintiffs
WILLIAM J. ANTHONY, ESQ., *et al.*, for Defendant

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

Presently before the court is plaintiffs' motion for conditional certification of a collective action under the Fair Labor Standards Act ("FLSA") and class certification of certain state-law claims under Fed. R. Civ. P. 23.  (Dkt. No. 63).  This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b), by the Honorable Thomas J. McAvoy, Senior United States District Judge.  (Dkt. No. 72).  The defendant responded in opposition to the motion (Dkt. No. 71), plaintiffs filed a reply (Dkt. No. 74), and defendant, with leave of court, submitted a sur-reply (Dkt. No. 78).[1]  For the reasons set forth below, this court grants plaintiffs' motion for

---

[1] On June 3, 2016, defendant submitted, as supplemental authority, a relatively recent Supreme Court case.  (Dkt. Nos. 79, 80).

conditional certification under the FLSA[2] and recommends granting in part and denying in part plaintiffs' motion for class certification under Fed. R. Civ. P. 23 (b)(3).

## **PROCEDURAL HISTORY**

In January 2014, plaintiff Holly Gregory commenced this action against her employer, defendant Stewart's Shops Corporation, which operates more than 300 convenience stores in Upstate New York and Vermont. (Compl. ¶ 16, Dkt. No. 1). In April 2014, Ms. Gregory and fellow employees Matthew Potter and Astrid Halten filed an amended complaint against Stewart's Shops, asserting claims under the Fair Labor Standards Act, New York Labor Law ("NYLL"), and New York state law. (Am. Compl., Dkt. No. 25). Between April 9, 2014 and July 9, 2015, approximately 31 present or former employees of Stewart's Shops, other than the three currently-named plaintiffs, filed FLSA consent forms to join the action as "opt-in" plaintiffs. (Dkt. Nos. 11-16, 18-21, 23, 26-28, 36, 38-40, 42, 43, 49, 55).

By a Decision and Order ("D&O") dated March 1, 2015, Senior District Judge McAvoy granted in part and denied in part defendant's motion to dismiss plaintiffs' first amended class action complaint under Fed. R. Civ. P. 12(b)(6). (3/1/15 D&O, Dkt. No. 41). Claims surviving the motion to dismiss were (1) plaintiff Potter and

---

[2] A Magistrate Judge "ha[s] the authority to grant conditional certification in the first instance because such a determination is a non-dispositive matter." *Bijoux v. Amerigroup New York, LLC*, No. 14-CV-3891, 2015 WL 5444944, at *1 (E.D.N.Y. Sept. 15, 2015) (citations omitted).

Halten's FLSA and NYLL overtime claims;[3] (2) plaintiffs' NYLL "gap-time" claims tied to specific, identifiable events such as nightly store closings or shift changes; (3) plaintiff Gregory's NYLL claims for call-in pay for store meetings on two specific dates; (4) plaintiffs' uniform maintenance pay claim; and (5) plaintiffs' Wage Theft Protection Act claims.  Judge McAvoy dismissed certain claims without prejudice to replead, including plaintiffs' common law breach-of-contract claim relating to promised, paid meal breaks and plaintiffs' gap-time claims connected with "general sporadic events" including bank runs and other errands such as picking up supplies. (3/1/15 D&O at 17 (referencing Am. Compl. ¶ 37)).

On April 1, 2015, plaintiffs filed a second amended complaint.  (2d Am. Compl., Dkt. No. 46).  In late May 2015, this court entered a scheduling order which set a final discovery cutoff of April 29, 2016, but which contemplated a first phase of discovery in anticipation of plaintiffs' filing of a combined FLSA conditional certification and Rule 23 certification motion by September 30, 2015.  (5/26/2015 Text Minute Entry; Dkt. Nos. 51, 56).  At the request of the parties, the deadline for filing plaintiffs' certification motion was extended to February 12, 2016, and the court confirmed that a second phase of discovery would be scheduled following resolution of the certification motion.  (Dkt. Nos. 59-61; 11/30/2015 Text Minute Entry).

_____

[3] Plaintiffs assert that plaintiff Gregory, who was a part-time employee of Stewart's Shops, never asserted an overtime claim, although Judge McAvoy granted defendant's motion to dismiss any overtime claim by Ms. Gregory.  (Pl.s' Reply Br. at 20 n. 12, Dkt. No. 74-5; 3/1/15 D&O at 6, 17).  Plaintiffs announced, in connection with their certification motion, that they were abandoning any individual or class claims based on federal minimum wage laws, although plaintiff Gregory's minimum wage claim was not dismissed by Judge McAvoy.  (Pl.s' Br. at 1, n. 2, Dkt. No. 63-1; 3/1/15 D&O at 7).

## FACTUAL BACKGROUND

Stewart's Shops employs approximately 4,000 "partners" as clerk/cashiers at their 300-plus convenience stores in New York and Southern Vermont.  (Carnevale Decl. ¶¶ 6, 13, Dkt. No. 71-1).  More than 75% of those partners are part-time employees who regularly work fewer than 30 hours per week.  (*Id.* ¶ 13).  Plaintiff Gregory worked as a part-time partner for four months at one of Stewart's Shops' stores.  (Gregory Dep. at 14, 22-23, Dkt. No. 63-4).  Plaintiff Halten worked as a partner for nine months, primarily in one store.  (Halten Decl. ¶¶ 3-4, 7, Dkt. No. 63-16; Halten Dep. at 154-55, Dkt. No. 63-10).  Plaintiff Potter worked for Stewart's Shops over a period of years at several different locations, as a partner and assistant manager.  (Potter Decl. ¶¶ 2, 3, 5, Dkt. No. 63-16; Potter Dep. at 181-82, Dkt. No. 63-13).

Plaintiffs assert that their "claims all flow from flawed corporate wide policies and protocols employed by Stewart's Shops."  (Pl.s' Br. at 1, Dkt. No. 63-1).

> For example, Stewart's Shops uses an outdated and unreliable timekeeping system to track hours worked by employees.  This flawed "system" consists of a schedule written in pencil. While employees can make changes to the schedule, nothing prevents the manager of the store from erasing the changes, or, simply ignoring them.  Since store managers are paid incentive bonuses based upon the profitability of the store, keeping labor costs down and avoiding overtime is a stated goal of management.  Further, there is no record of changes made by employees or managers.  If an employee believes his/her hours have been cut, he/she is told to bring it up with the very manager [who] has committed wage theft.  Complaints to District Managers or Corporate fare no better as management from top to bottom share in the objective to keep labor costs down and keeping hours paid to those budgeted.

4

(*Id.* at 1-2).  Plaintiffs allege that they frequently worked "off the clock" for which they were not paid "straight time" or "gap time" under the NYLL, and that, full-time employees who worked more than 40 hours in particular weeks were also deprived of overtime pay under the FLSA and NYLL.  (Pl.s' Br. at 6).  The examples of alleged off-the-clock work that survived defendant's motion to dismiss involved employees not getting paid for all the time required to open or close a store or for coming in early for their shifts, which was allegedly required by Stewart's Shops' "Hand Off Don't Run Off!!!" "policy."  (Pl.s' Br. at 6-8; Finn Att'y Decl. ¶ 18, Dkt. No. 63-2); 2d Am. Compl. ¶¶ 12-16).

Plaintiffs also allege that they were denied uniform maintenance pay, under N.Y.C.R.R. § 146-1.7, because Stewart's Shops did not provide them with a number of "wash and wear" uniforms equal to the number of days per week they regularly worked, and did not compensate them for maintaining or laundering the uniforms. (Pl.s' Br. at 9-10).  Plaintiffs contend they were denied "call-in pay" under 12 N.Y.C.R.R. § 146-1.5 because they were not paid for a minimum of three hours when called in to the store on their days off for irregularly scheduled store meetings.  (Pl.s' Br. at 10-13).  Plaintiffs allege that Stewart's Shops breached an implied agreement to provide employees who worked longer than six hour shifts a paid 20-minute meal break because they rarely had time during the work day to actually take such a break,

although they were paid for that time. (Pl.s' Br. at 13-15).[4]  Finally, although plaintiffs admit that they signed wage statements complying with the New York State Wage Theft Protection Act, they assert that defendant violated the act by not providing employees with a written copy of the statement.  (Pl.s' Br. at 15-16).

Plaintiffs seek conditional certification of the following "similarly situated individuals" under the FLSA:

> all persons who work or have worked as a non-exempt employee for defendant in one of its convenience stores in the past three years and who, including time worked off the clock, have worked forty or more hours in a week and have been deprived overtime compensation (the "FLSA Class").

(Pl.s' Br. at 2).  Plaintiffs also seek an order certifying this class action pursuant to Rule 23 on behalf of a class consisting of:

> all persons who work or have worked as a non-exempt employee for defendant in one of its convenience stores located in the State of New York in the past six years and who: (a) have been denied overtime compensation under State and Federal Law; (b) have been denied "gap" time pay for off the clock work under State law; (c)  have been denied uniform maintenance pay under State law; (d) have been subjected to wage disclosure violations pursuant to New York Labor Law 195.1; (e) have suffered as a result of defendant's breach of its promise to give paid breaks to its employees; and, (f) have been denied call in pay under State law . . . (the "New York Class").

(Pl.s' Br. at 2).

---

[4] This common law claim was dismissed by Judge McAvoy, without prejudice to replead, for failure to adequately allege an agreement on the part of Stewart's Shops to provide a paid meal break or damages resulting from the alleged breach of that agreement. (3/1/15 D&O at 11-12).  The second amended complaint supplemented, *inter alia*, plaintiffs' allegations regarding Stewart's Shops breach of contract relating to meal breaks.  (2d Am. Compl., Third Cause of Action, ¶¶ 105-06).  Defendant answered the second amended complaint without moving to dismiss the breach-of-contract claim.  (Dkt. No. 48).

Defendant strongly contests plaintiffs' allegations regarding the time keeping and related practices and policies of Stewart's Shops.  According to defendant's Director of Personnel, Anthony Carnevale, a weekly schedule is prepared at the store level in advance of a given workweek, which lists the anticipated shifts that each employee is scheduled to work.  (Carnevale Decl. ¶ 17).  "It is the Company's long-standing policy that, thereafter, this weekly schedule is to be changed or updated to reflect the actual hours worked by each store employee."  (*Id*.)  The partner is responsible for seeing that the pre-printed weekly schedule is changed to reflect the actual time that the partner worked.  (*Id*. ¶ 18).  "[W]hen each employee is hired (and at various times thereafter) he or she is provided with a document called a Partner Understanding Sheet . . . [which] specifically states, 'so that you are paid accurately we ask each Partner to change the schedule to reflect the hours they actually worked.'" 21.  (*Id*. ¶¶ 19-20 & Ex. A, Dkt. No. 71-1 at 17).  "This policy is also included in the Company's Personnel Manual which states, 'So that you are paid for all the time you worked, please update any changes in start/stop times on the posted schedule.'"  (*Id*. ¶ 21 & Ex. B, Dkt. No. 71-1 at 20).  Stewart's Shops timekeeping policy is also specifically referenced on multiple versions of the Company's work schedules, stating "Partners  adjust schedule to show actual hours worked!"  (Carnevale Decl. ¶ 22; Potter Dep. at 149-50).

Each of the named plaintiffs testified that they understood that the defendant's policy instructs employees to change the store schedule to reflect their actual hours

worked.  (Gregory Dep. at 122-23; Halten Dep. at 55-56; Potter Dep. at 44, 57-58, 72).

Each named plaintiff also admitted that there were a number of occasions on which

their store schedules were, in fact, changed to accurately reflect their actual hours

worked.  (Gregory Dep. at 77; Halten Dep. at 57, 116, 120-21, 147; Potter Dep. at

61-62, 70, 105-06, 126-28).  Plaintiffs Gregory and Halten alleged that their individual

store managers frequently deviated from defendant's time keeping policy.  (Gregory

Dep. at 122-23; Halten Dep. at 55-56).  Plaintiff Potter admitted that no manager ever

told him not to change the schedule, that he could not change the schedule, or that he

would not get paid for any of the time that he worked.  (Potter Dep. at 148, 157).

However, in a declaration, Mr. Potter stated "I occasionally made changes to the

schedule but knew that Stewart's often disciplined people who worked additional time

th[a]n scheduled because according to Stewart's this was the employee's fault for not

being productive enough."  (Potter Decl. ¶ 14).

Defendant's Director of Personnel stated "there is no company-wide policy

requiring employees to arrive for work 10-15 minutes before their scheduled shift

begins or to remain at work 10-15 minutes after  their shift ends.  The 'Hand Off

Don't Run Off' language on the store schedules . . . is simply meant to recommend a

brief exchange of information between partners during a shift change. . . . [I]t is

Stewart's policy to compensate their partners for the entire period of their work shift .

. ., including during their rest and meal break periods."  (Carnevale Decl. ¶¶ 25-26,

28).

8

Mr. Carnevale also averred "it is and has been Stewart's policy to provide each of our employees with a sufficient number of wash and wear uniform items . . . in an amount consistent with the average number of days worked per week per employee. It is Stewart's policy that if any employee needs any additional uniform items, the items are made available to the stores as needed."  (Carnevale Decl. ¶ 29).

Mr. Carnevale further stated that "[a]ll . . . employees are also provided with legally compliant wage notices.  Each wage notice consists of one full-page, letter-sized sheet of paper containing two identical wage notices which lists the employees' regular and overtime pay rate.  After meeting with and discussing the contents of the form with the employee, it is Stewart's practice to detach one-half of the form and provide it to the employee.  It is also Company practice to retain the remaining half of the document for their records."  (Carnevale Decl. ¶ 30).

Defendant contends that, to the extent plaintiffs have documented deviations from Stewart's Shops various policies resulting in wage and hour violations, they were dictated by specific store managers and, thus, are not susceptible to class-wide determination.  (Def.'s Br. at 11, Dkt. No. 71).  The 300-plus Stewart's Shops "vary in a number of material ways, including but not limited to geographic location, hours of operation, products and services offered, and revenue generated[,]" which could impact on how defendant's wage and hour policies are implemented on a store-by-store basis.  (Def.'s Br. at 3-4; Carnevale Decl. ¶¶ 7-12).

In addition to the evidence discussed so far, plaintiffs supported their

certification motion with, *inter alia*, declarations from 18 opt-in plaintiffs and potential class members who are former employees of Stewart's Shops (Dkt. No. 63-16), payroll records, and certain store alarm records. (Finn Att'y Decl., Dkt. No. 63-2). In opposing the motion, defendant has submitted, *inter alia*, declarations of approximately 50 current employees of Stewart's Shops–potential class members under Rule 23–executed in March 2014. (Posinelli Att'y Decl. ¶¶ 9-58, Dkt. No. 71-1 at 2-6). Further details regarding the evidence submitted by the parties will be discussed below as necessary to resolve the issues raised by plaintiffs' motion.

## CONDITIONAL CERTIFICATION UNDER THE FLSA

### I.   Applicable Law–FLSA

The Second Circuit has adopted a two-step method of certification in an opt-in collective action under the FLSA. *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010). At the first step, the district court must make "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555. To satisfy their burden at this first step and achieve conditional certification, plaintiffs must make only a "'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555. "'Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members.'" *Amador v. Morgan Stanley & Co. LLC*, No. 11 CIV. 4326,

2013 WL 494020, at *2 (S.D.N.Y. Feb. 7, 2013) (citation omitted).

Although unsupported assertions are insufficient, the Second Circuit has emphasized that the standard of proof should remain "low" because the purpose of this first stage is merely to determine whether similarly situated plaintiffs do in fact exist. *Id.* at *3 (citing, *inter alia*, *Myers*, 624 F.3d at 555). "At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations. "Upon finding that plaintiffs are 'similarly situated' with other potential opt-ins, a court 'should conditionally certify the class, order that appropriate notice be given to putative class members, and the action continue as a collective action throughout the discovery process.'" *Hernandez v. Merrill Lynch & Co.*, No. 11 Civ. 8472, 2012 WL 1193836, at *3 (S.D.N.Y. Apr. 6, 2012) (citation omitted).

At the second stage of the certification process, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs.  The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Myers*, 624 F.3d at 555; *Hernandez*, 2012 WL 1193836, at *4 ("The burden imposed at [the] first 'conditional certification' stage is minimal precisely because the second step allows for a full review of the factual record developed during discovery to determine whether opt-in plaintiffs are actually 'similarly situated' to the named plaintiffs.").

Defendant argues that discovery in this case is now "closed," and that the court should therefore apply, to plaintiffs' conditional certification motion, the more stringent standards that would normally apply to a decertification motion at the second stage of FLSA proceedings.  (Def.'s Br. at 32-33).  However, while the parties had more than eight months to conduct discovery before the extended deadline for plaintiffs to file their certification motion (Dkt. Nos. 51, 63), discovery was phased, and clearly was not completed by the April 29, 2016 discovery deadline originally set by the court.[5]  The court in *Amador* rejected a similar defense argument that the plaintiffs in that case should have been required to meet a more exacting standard than that typically applied at the first stage of the certification process because they filed their motion after a seven-month discovery period.  *Amador v. Morgan Stanley & Co. LLC*, 2013 WL 494020, at *4 ("the overwhelming case law in this Circuit clearly holds that 'a heightened standard is not appropriate during the first stage of the conditional certification process and should only be applied once the entirety of

---

[5] See 11/30/2015 Text Minute Entry (the parties "are currently on track with the phased discovery schedule and are in agreement that Phase II deadlines should be set after disposition of the plaintiffs' motions for conditional certification of the FLSA claims and for class certification under Rule 23 for the state law claims").  Plaintiffs' counsel noted that he did not receive paper discovery with respect to ten of the opt-in plaintiffs until two months after the certification motion was filed, and that none of the opt-in plaintiffs had been deposed by the end of April 2016.  (Finn Supp. Att'y Dec. ¶¶ 5-7, Dkt. No. 74).  Defense counsel essentially acknowledged that discovery was phased and that discovery with respect to the opt-in plaintiffs was still ongoing after plaintiffs' certification motion was filed.  (*See* Def.'s Sur-Reply Bf. at 1, n.2, n.3, Dkt. No. 78).  There is no indication that any of the current Stewart's Shops employees for whom defendant submitted declarations have been deposed or have been the subject of any follow-up discovery.

discovery has been completed'") (collecting cases).[6]  Because not all merit-based

discovery has been completed, the court finds that the standard for the first stage of

FLSA certification, as set forth in *Myers*, controls here.

## II.   Analysis

Plaintiffs have attempted to establish that Stewart's Shops had a systematic

practice of requiring or encouraging off-the-clock work by its employees primarily

through anecdotal evidence from the three named plaintiffs and 18 additional former

employees, corroborated to some extent by store alarm records.  While conceding that

part-time employees like plaintiff Gregory could not assert overtime claims, Judge

McAvoy found that plaintiffs Halten and Potter alleged viable overtime claims in the

First Amended Complaint.  (3/1/15 D&O at 5-6)  Of the 18 other opt-in plaintiffs or

putative class members for whom plaintiffs submitted declarations (Dkt. No. 63-16),

all alleged that they were not paid for various categories of off-the-clock work, and all

but four stated that, at least during some weeks, they would have worked more than 40

---

[6] *See also Roach v. T.L. Cannon Corp.*, No. 3:10-CV-591 (TJM/DEP), 2013 WL
1316397, at *5 n.7  (N.D.N.Y. Mar. 5, 2013) (Rep't Rec.), *adopted as modified*, 2013 WL
1316452 (N.D.N.Y. Mar. 29, 2013), *vacated and remanded on other grounds*, 778 F.3d 401 (2d
Cir. 2015) (rejecting defendants' argument that, after more than a year of discovery, the court
should analyze plaintiffs' renewed, company-wide conditional certification motion under step
two of the FLSA analysis, and in essence preemptively de-certify the FLSA claim as a collective
action; [e]ngaging in the in-depth factual analysis required at that step would be premature at this
juncture, however, because it is not clear from the record that defendants produced class-wide,
merit-based discovery that would render discovery complete as it relates to all potential opt-in
plaintiffs).

hours and would have been entitled to overtime.[7]

In many of the declarations submitted by plaintiffs, former Stewart's Shops employees allege that "the most obvious example of off-the-clock work occurred when employees closed the store." (*See, e.g.*, Lotto Decl. ¶¶ 11-12, Dkt. No. 63-16 at 22; Kruger Decl. ¶¶ 11-12, Dkt. No. 63-16 at 52).[8] "It was Stewart's Shops policy to pay employees fifteen minutes to close the store. . . .  In fact, even with two people working, it was very common for it to take 30 minutes or more to close the store." (*Id.*).  Plaintiffs' counsel highlighted the declarations of David Lotto and Monica Kruger because both eventually became store managers and both worked, over many years, in a number of defendant's stores, which they contend were subject to "the same policies and procedures that resulted in employees being consistently shorted on their pay." (Lotto Decl. ¶ 7; Kruger Decl. ¶ 6; Pl.s' Reply Br. at 5-10).

Plaintiffs and their declarants also generally stated that Stewart's Shops clerk/cashiers were generally expected to arrive ten to fifteen minutes early for their shifts and "would typically not be paid for that time."  (*See, e.g.*, Potter Decl. ¶ 9[9];

---

[7] (Gardner ¶ 16;  Pease Decl. ¶ 16; Miakisz Decl. ¶ 16; Lotto Decl. ¶ 24; Freemire Decl. ¶ 16; Slater Decl. ¶ 15; Papadakis Decl. ¶ 16; Carpenter Decl. ¶ 15; Long Decl. ¶ 15; Bellino ¶ 20; Miele-Roddy ¶ 21; Kruger ¶ 19; Stevens ¶ 19; Bate ¶ 17).

[8] The 20 or so declarations submitted by plaintiffs frequently use a lot of identical language, suggesting that they were all modified by or on behalf of particular former employees from a common template.  As discussed below, the competing declarations submitted by defendant had similar deficiencies.

[9] During his deposition, plaintiff Potter testified that a manager's expectation about clerk/cashiers arriving early for a shift varied on a "store-by-store" basis.  (Potter Dep. at 87-88).

Lotto Decl. ¶ 10; Kruger Decl. ¶ 9).  This practice was allegedly required pursuant to the "Hand Off - Don't Run Off" language printed on the store schedules.  (2d Am. Compl. ¶¶ 16-19).

Plaintiffs cited store alarm records to support the specific claims of Ms. Gregory and Ms. Halten that stores were frequently closed well more than 15 minutes after the end of their shifts.  (*See, e.g.*, Pl.s' Br. at 7-8; Halten Decl. ¶¶ 18, 34-90).[10]  In her declaration, plaintiff Halten documented at least six weekly pay periods when she worked over 40 hours and was not paid for all the overtime hours she worked.  (Halten Decl. ¶¶ 47, 62-66, 71, 72, 74-81, 82-89).[11]

Ms. Gregory and Ms. Halten allege that when they complained to managers about not being paid for all the time they work, during store closings or otherwise, those complaints were ignored; and Ms. Halten alleged that when she added actual work time to her schedule, her manager usually changed it back.  (*See, e.g.*, Pl.s' Br. at 8; Halten Decl. ¶ 13-15, 29; Halten Dep. at 56-59)  Based on a review of the 18 other

---

[10] As noted earlier, Ms. Gregory is not asserting a claim for overtime under the FLSA.

[11] Defendant attempts to impeach the declaration of Ms. Halten by pointing out that her calculation of off-the-clock work time in various weeks, based in large part on her analysis of alarm records, was inconsistent with her prior deposition testimony and the notes on her personal calendar which she had previously used to estimate her actual work time. (Def.'s Bf. at 9-10). Ms. Halten explained that, between the time of her deposition and the drafting of her declaration, she saw the alarm reports for the first time and was able to study relevant Stewart's Shops time records more carefully.  Based on the case law cited elsewhere herein, any such discrepancies in Ms. Halten's calculation of her off-the-clock time are not relevant in considering conditional certification under the FLSA.  As discussed below, such credibility issues may be relevant to the whether the plaintiffs have established,  by a preponderance of the evidence, the elements for class certification under the more stringent standards of Fed. R. Civ. P. 23.

declarations submitted by plaintiffs, the court found that five other former Stewart's Shops employees stated that they made complaints to managers about off-the-clock work that were ignored, or that changes they made to their schedule/time sheet were ignored or changed back.  (Gardner Decl. ¶¶ 13-14, Dkt. No. 63-16 at 17; Kellar Decl. ¶¶ 13, 15, 17, Dkt. No. 63-16 at 38-39; Lounsbury Decl. ¶¶ 14-15, Dkt. No. 63-16 at 41; Bellino Decl. ¶¶ 16-17, Dkt. No. 63-16 at 47; Miele-Roddy Decl. ¶¶ 14-15, Dkt. No. 63-16 at 49-50; Stevens Decl. ¶¶ 16-17, Dkt. No. 63-16 at 56).

David Lotto, stated that, while a store manager, he would honor employee requests to change their time sheets to add additional work hours.  However, he claimed that because Stewart's Shops "very much frowns upon paying for labor costs above and beyond those budgeted and scheduled for the week . . .[,] employees stop requesting to be paid for "off the close" work because the message is sent . . . that their job was in jeopardy."  (Lotto Decl. ¶¶ 16-17).  Both Mr. Lotto and Ms. Kruger stated that, like other store managers, they were well aware that other employees were not being paid for all the time that they worked.  (Lotto Decl. ¶¶ 9, 12, 19; Kruger Decl. ¶¶ 8, 12, 18).  Both former managers also stated that managers were provided with store alarm reports which would show when employees finished closing a store. Mr. Lotto alleged that managers were provided with alarm reports when they indicated that an employee spent more than 30 minutes to complete store closing tasks, and Mr. Lotto was instructed to counsel such employees to work more quickly.  (Lotto Decl. ¶ 14; Kruger Decl. ¶ 13).

Analogous and persuasive authority from this Circuit indicates that the evidence presented by plaintiffs is sufficient to meet their low burden for conditional certification of a collective action under the FLSA.  For example, in *Amador v. Morgan Stanley & Co. LLC*, 2013 WL 494020, at *5, "three plaintiffs, five opt-in plaintiffs, and three declarants each allege[d] that he or she was employed as a CSA [client service associate], a position that is not exempt from the FLSA's overtime pay provisions, and was not always compensated for time worked in excess of forty hours per week."

> Moreover, Plaintiffs . . .  presented evidence that Morgan Stanley branch managers and supervisors knew that CSAs were working overtime hours to adequately perform their job functions but nonetheless: (1) told them to not record those hours, except in particular circumstances and with pre-approval; (2) altered time records that reflected overtime; (3) demanded that CSAs who submitted timesheets reflecting overtime change those timesheets; and/or (4) pressured CSAs in such a way as to discourage them from asking for overtime that they actually worked. . . .  Plaintiffs and declarants also assert[ed] that, although there was a formal policy of requiring payment for overtime work, CSAs regularly worked overtime "off-the-clock" in order to satisfy the needs of their jobs.

*Id*.  Based on the pleadings and that evidence, which was less extensive than the evidence offered by plaintiffs in this case, the court in *Amador* granted conditional certification under the FLSA, finding "that Plaintiffs have satisfied their minimal burden at this preliminary stage of demonstrating that they were subject to common policy or practice and were "similarly situated" to one another and to potential class members."  *Id*. at 4.  The *Amador* court determined that,

> at the first stage of the *Myers* framework, "the existence of a formal policy that

17

is facially unlawful is not a prerequisite for conditional certification.  Instead, it is sufficient to show that a facially lawful policy was implemented in an unlawful manner, resulting in a pattern or practice of FLSA violations." . . . Plaintiffs "need not show that 'all managers nationwide [acted] in lockstep' in order to make a modest factual showing that they were subject to a common policy or practice."

*Id*. at *6 (citations omitted).

In *Bijoux v. Amerigroup New York*, LLC, No. 14-CV-3891, 2015 WL 4505835 (E.D.N.Y. July 23, 2015), (Rep't Rec.), *adopted*, 2015 WL 5444944 (E.D.N.Y. Sept. 15, 2015) plaintiffs submitted, in support of a motion for conditional certification, "declarations from two named and ten opt-in plaintiffs, largely identical in substance, which assert that the plaintiffs (and other MRs [marketing representatives]) had similar job responsibilities, routinely (and with Amerigroup's knowledge) worked in excess of forty hours per week in order to satisfy Amerigroup's enrollment quota, and were not fully compensated for all of their overtime hours." *Id.* at *9.  "Moreover, three of the plaintiffs' declarations state that an Amerigroup manager was fired for trying to pay his employees overtime, further suggesting an unlawful policy geared toward depriving MRs of overtime pay." *Id*. at *6.  The court in *Bijoux* held that "plaintiffs have made a sufficient showing that Amerigroup's 'facially lawful policy was implemented in an unlawful manner, resulting in a pattern or practice of FLSA violations.'" *Id*. at *6 (citations omitted).  The court, granted conditional certification under the FLSA, holding that allegations of the sort made by plaintiffs in *Bijoux* "are consistently found to satisfy the "similarly situated" requirement." *Id.* at 9 (collecting

cases).[12]  *Bijoux*, *Amador*, and the many cases from this Circuit that they cite, amply

support this court's conclusion that the plaintiffs in this case have presented sufficient

evidence to meet the requirements for FLSA conditional certification.[13]

   In arguing that conditional certification under the FLSA should be denied in

this case, the defendant relies primarily on *Zivali v. AT & T Mobility, LLC*, 784 F.

Supp. 2d 456, 460-69 (S.D.N.Y. 2011), a case which granted a motion to decertify an

FLSA collective, under the second stage of the *Myers* analysis.  As discussed above,

the more lenient standards for conditional certification, based on the first stage of the

*Myers* analysis, should be applied here, notwithstanding the fact that considerable

discovery has been allowed.[14]  Defendant also cites *Diaz v. Elecs. Boutique of Am.,*

*Inc.*, No. 04-CV-840, 2005 WL 2654270, at *4-5 (W.D.N.Y. Oct. 17, 2005), a case

that denied conditional certification of an off-the-clock claim for overtime under the

FLSA.  However, the only evidence offered in support of the motion for conditional

certification in that case was the affidavit of a single plaintiff whereas, in this case,

---

[12] The court in *Bijoux* noted that "*Amador* . . . concluded, as we do here, that 'the mere fact that [defendant] paid a significant sum in overtime to [employees] is not dispositive or even relevant at the conditional certification stage.'" *Id.* at 9 (citing, *inter alia*, *Amador*, 2013 WL 494020, at *8 ).

[13] *See also Roach v. T.L. Cannon Corp.*, 2013 WL 1316397, at *1, 5-6 ("while plaintiffs have met their modest burden of establishing the requisites for the FLSA collective action certification they now seek, they have failed to meet their more demanding burden to show that they satisfy the requirements for class action certification under Rule 23 with respect to all of their NYLL claims, with the exception of the spread of hours claim").

[14] As discussed below, *Zivali* provides support for defendant's argument that class certification of plaintiffs' state-law, off-the-clock claims should be denied under the more rigorous standards of Fed. R. Civ. P. 23.

plaintiffs offer corroborating declarations from multiple opt-in plaintiffs, as well as supporting payroll records and store alarm records. *See also Francis v. A & E Stores, Inc.*, No. 06 Civ. 1638, 2008 WL 4619858, at *3 n. 3 (S.D.N.Y. Oct. 16, 2008) (noting that *Diaz* is "against the weight of authority").[15]

The defendant has responded to plaintiffs' evidence by highlighting inconsistencies in plaintiffs' statements and by providing declarations from 50 current employees who state that Stewart's Shops consistently paid its store staff for all hours worked. As discussed in detail below, that competing evidence convinces this court that plaintiffs have not established the elements for Rule 23 class certification on their state-law overtime claims. However, it does not prevent plaintiffs from satisfying the more lenient standards for conditional certification under the FLSA. As noted above, the case law in this Circuit makes clear that, in deciding a motion for conditional

---

[15] The court in *Amador*, 2013 WL 494020, at *7, similarly distinguished *Eng-Hatcher v. Sprint Nextel Corp.*, No. 07 Civ. 7350, 2009 WL 7311383, at *3 (S.D.N.Y. Nov. 13, 2009), which denied a motion for conditional certification where the plaintiff "merely present[ed] her own deposition testimony as proof of these allegations." *Fernandez v. Wells Fargo Bank, N.A.*, Nos. 12 Civ. 7193, 12 Civ. 7194, 2013 WL 4540521 (S.D.N.Y. Aug. 28, 2013), cited below in connection with the motion for class certification under Rule 23, also denied conditional FLSA certification. However, in *Fernandez*, the court found several critical deficiencies in the evidence presented by plaintiffs in support of their FLSA conditional certification motion that are not present here. 2013 WL 4540521, at *17 ("much of the evidence submitted in support of the collective action falls outside of the relevant time period"; "plaintiffs' declarations omit key details concerning the identities of speakers and participants, and even approximate dates, when instructions allegedly were issued concerning off-the-clock work and denial of overtime"; "plaintiffs have conflated the policies of [co-defendants and successive employers] Wachovia and Wells Fargo, with little emphasis given to timely, geographically relevant evidence 'of a common policy or plan that violated the law' in the Northeast Region of Wells Fargo"). While the various cases involving off-the-clock claims involve varying facts, this court concludes that *Amador*, *Bijoux*, and the cases cited therein are more closely analogous to the instant case and provide persuasive authority for granting conditional certification under the FLSA.

certification under the FLSA, a court is not to resolve issues of credibility. *See, e.g.*, *Amador v. Morgan Stanley & Co. LLC*, 2013 WL 494020, at *8 (none of the alleged inconsistencies in deposition testimony and declarations offered by plaintiffs defeats the required "modest showing" required for conditional FLSA certification "because all would require the Court to resolve factual disputes or make credibility determinations"); *Damassia v. Duane Reade, Inc.*, No. 04 CIV. 8819, 2006 WL 2853971, at *5 (S.D.N.Y. Oct. 5, 2006) ("defendant's attacks on plaintiffs' affidavits and other evidence raise questions as to whether plaintiffs could prevail under a more stringent standard and whether the opt-in plaintiffs will survive a decertification motion at the close of discovery; defendant's arguments and evidence do not, however, undermine plaintiffs' 'modest factual showing' to such an extent that a preliminary determination in favor of plaintiffs is unwarranted at [the conditional certification] stage").

Similarly, the competing declarations offered by defendant are not appropriately considered in deciding whether conditional certification is appropriate. *See, e.g.*, *Bijoux v. Amerigroup New York*, LLC, 2015 WL 4505835, at *13 ("declarations submitted in opposition to a motion for conditional certification carry limited weight, since '[t]he focus of the court's inquiry is not on the defendants' evidence, but on whether the plaintiffs have made their requisite showing") (citation omitted) (collecting cases); *Amador*, 2013 WL 494020, at *8-9 ("courts in this Circuit regularly conclude that such declarations do not undermine the plaintiffs' showing in the first

stage of the conditional certification process") (collecting cases); *Becerra v. IM LLC-I*, No. CV 14-2671, 2015 WL 1954478, at *4 (E.D.N.Y. Apr. 29, 2015) ("[t]he Court declines to consider defendants' declarations, whose authors have not been deposed, as they do not bear on whether Plaintiff has made the 'modest factual showing' that he is required to make at this stage of the litigation"); *Hernandez v. Merrill Lynch & Co.*, 2012 WL 1193836, at *5 ("[W]eighing the affidavits submitted by employees on both sides of the action–*i.e.*, affidavits from the named plaintiffs as well as affidavits from employees submitted on defendants' behalf–would require the Court to determine the facts, determine the credibility of the affiants, and resolve legal contentions, all of which the conditional certification and potential later decertification process is structure[d] so as to avoid.").

    As noted above, at least 75% of defendant's clerk/cashiers reportedly work or worked part-time, i.e., less that 30 hours per week.  Like plaintiff Gregory, such part-time employees are unlikely to have been denied overtime, even if they were not paid for time that they worked off the clock.  To avoid notice to a substantial number of present or former employees who are extremely unlikely to have valid overtime claims, and to avoid confusion as to which employees should "opt in," the court will redefine plaintiffs' FLSA class to limit it to full-time employees who worked 30 or more hours per week, as follows:

> all persons who work or have worked as a non-exempt, full-time employee (working 30 or more hours per week) for Stewart's Shops Corporation in one of its convenience stores in the past three years and who, including time worked off the clock, have worked forty or more hours in a week and have been

deprived of overtime compensation.

## CLASS CERTIFICATION UNDER FED. R. CIV. P. 23

Plaintiffs have moved to certify, under Fed. R. Civ. P. 23 (b)(3), subclasses with respect to state-law claims that Stewart's Shops employees (1) have been denied overtime compensation and "gap-time" pay for off-the-clock work under the NYLL; (2) have been denied uniform maintenance pay under the New York State Hospitality Wage Order; (3) have been denied call-in pay under the New York State Hospitality Wage Order; (4) have been subjected to wage disclosure violations pursuant to NYLL § 195.1; and (5) have been damaged by defendant's breach of its alleged agreement to provide paid meal breaks of 20 minutes to employees who work shifts of six hours or more.  The declarations and other evidence offered by the defendant, while not appropriately considered in the context of FLSA conditional certification, are relevant in deciding whether the plaintiffs have sustained their burden of proving, by a preponderance of the evidence, the prerequisites to class certification under Rule 23. For the reasons stated below, this court concludes that, based on the current evidence of record, the plaintiffs have sustained their burden of establishing the basis for Rule 23 class certification only for their call-in-pay claim under the New York State Hospitality Wage Order and their common-law breach of contract claim relating to meal breaks.  Accordingly, the court recommends that plaintiffs' motion for class certification with respect to its other state-law claims be denied.

## I.    Applicable Law–Rule 23

Rule 23 requires that a proposed class action (1) involve a class that is so numerous that joinder of all members is impracticable, (2) involve questions of law or fact common to the class, (3) involve class plaintiffs whose claims are typical of those of the class, and (4) involve a class representative or representatives who adequately represent the interests of the class.  *See* Fed. R. Civ. P. 23(a).  "Additionally, while it is not explicitly spelled out in Rule 23, courts have added an 'implied requirement of ascertainability' with respect to the class definition." *Meyers v. Crouse Health System, Inc.*, 274 F.R.D. 404, 413 (N.D.N.Y. 2011) (citing *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006)).  Ascertainability is usually found where membership in the class can be identified by "'reference to objective criteria.'" Meyers, 274 F.R.D. at 416 (citations omitted).[16]

In addition, the district court must be satisfied that certification is appropriate under Rule 23(b).  One of the bases for certification under Rule 23(b), at issue here, allows for certification if both (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "Predominance is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a

---

[16] "Class members do not actually need to be ascertained before certification, but a court must determine that the class will be ascertainable at some stage of the proceedings."  *Id.*

genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (citations omitted). "What matters to class certification . . . is not the raising of common 'questions'–even in droves–but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted).  The Supreme Court in *Comcast Corp. v. Behrend*, __U.S. __, 133 S. Ct. 1426 (2013) "reiterated that damages questions should be considered at the certification stage when weighing predominance issues . . . .", but the Second Circuit has subsequently held that "[t]he Supreme Court did not foreclose the possibility of class certification under Rule 23(b)(3) in cases involving individualized damages calculations." *Roach v. T.L. Cannon Corp.*, 778 F.3d at 408 (citations omitted).

"[A] district judge may not certify a class without making a ruling that each Rule 23 requirement is met," *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d at 27, and "[t]he party seeking certification must establish the Fed. R. Civ. P. 23 requirements by a preponderance of the evidence." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).  "Rule 23 does not set forth a mere pleading standard . . .", and courts must undertake a "rigorous analysis" to ensure that the requirements of Rule 23 have been satisfied.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 350-51.  "Frequently that 'rigorous analysis' will

entail some overlap with the merits of the plaintiff's underlying claim." *Id*. at 351.
However, in its Rule 23 analysis, the court should not make any factual findings or
merits determinations which are unnecessary to the issue of class certification. *Amgen
Inc. v. Connecticut Ret. Plans & Trust Funds*, __ U.S. __, 133 S. Ct. 1184, 1195,
(2013) ("[m]erits questions may be considered to the extent–but only to the
extent–that they are relevant to determining whether the Rule 23 prerequisites for
class certification are satisfied").

    "The weight of authority rejects the argument that *Dukes* bars certification in
wage and hour cases." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 616
(S.D.N.Y. 2012) (collecting cases); *Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, 288
(S.D.N.Y. 2015), *reconsideration denied*, No. 10 CIV. 5950, 2015 WL 4629444
(S.D.N.Y. Aug. 4, 2015).  While this court, like Judge Katherine Polk Failla in *Ruiz*,
"will not pretend that the entirety of federal Rule 23 jurisprudence (even, if not
especially, post-*Dukes* ) can be reconciled[,]" I agree with her that a review of the case
law in this Circuit confirms that cases, like this one, involving allegations of
"off-the-clock" work, are less susceptible of class-wide resolution than other types of
wage and hour cases. *Ruiz v. Citibank*, N.A., 93 F. Supp. 3d at 294.  *See also
Morangelli v. Chemed Corp.*, 922 F. Supp. 2d 278, 306 (E.D.N.Y. 2013) ("[o]ff-the-
clock" cases can present challenges for class-wide determination that often preclude
certification") (citation omitted).

## II.   Overtime and Gap-Time Claims

### A.   Introduction

Although the court has concluded that plaintiffs have met the minimal burden to warrant conditional certification of their overtime claims under the FLSA, I find that they have not sustained the heavier burden to justify class certification of their overtime and related gap-time claims under the NYLL.  The court concludes that the defense declarations rebut plaintiffs' claims that Stewart's Shops had a company-wide policy of pressuring its clerk/cashiers to perform off-the-clock work.  As a result, plaintiffs have not established, by a preponderance of the evidence, that the issues relevant to plaintiffs' off-the-clock claims under the NYLL that are amenable to class-wide determination predominate over those issues that would require individualized or store-by-store determinations.  Because plaintiffs are not able to establish the elements of commonality, typicality, and predominance, necessary for Rule 23 certification of the NYLL overtime and gap-time claims, the court need not address the other elements under Rule 23.

### B.   Commonality/Typicality/Predominance

The key issues relating to class certification of plaintiffs' overtime and gap-time claims "tend to merge into the determination of whether the state classes share common questions, susceptible to class-wide proof, that advance the litigation to a sufficient extent to justify "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Ruiz v. Citibank*, N.A., 93 F.

Supp. 3d at 287-88 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).

The Supreme Court has observed that "the commonality and typicality requirements of

Rule 23(a) tend to merge." *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 157 n.

13 (1982).  "Likewise, the predominance inquiry is similar to, but more demanding

than, the commonality inquiry."  *Saleem v. Corp. Transp. Grp., Ltd.*, No. 12 CIV.

8450, 2013 WL 6061340, at *7 (S.D.N.Y. Nov. 15, 2013) (citing *Moore v.

PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).   Because the elements of

commonality, typicality, and predominance are intertwined as they relate to plaintiffs'

state law overtime and gap-time claims, this court will consider those issues together.

As plaintiffs have stated, their claims, particularly those relating to alleged off-

the-clock work, all flow from allegedly flawed corporate-wide policies and protocols

employed by Stewart's Shops.  (Pl.s' Br. at 1, Dkt. No. 63-1).  Plaintiffs have also

tacitly acknowledged that defendant's time keeping policies, on their face, do not

violate the FLSA or NYLL.  See *Mendez v. U.S. Nonwovens Corp.*, 314 F.R.D. 30, 46

(E.D.N.Y. 2016) ("the fact that the Defendants had a general practice of paying

employees based on their shift schedule does not, on its face, raise an inference that

the policy resulted in denying . . . workers wages or overtime");  *Zivali v. AT & T

Mobility, LLC*, 784 F. Supp. 2d at 46 ("[w]hile the FLSA requires that employers

'make, keep, and preserve" a record of hours worked by their employees, . . . it does

not prescribe any particular form of recordkeeping" (citing 29 U.S.C. § 211(c); 29

C.F.R. § 516.1(a)).

28

"*Dukes* suggested that in the absence of an express company policy that violated employee-plaintiffs' rights, plaintiffs could nonetheless obtain class certification to challenge a practice that had sufficiently pervaded the company that it had become a *de facto* policy. . . .   Specifically, the Court required plaintiffs to demonstrate "a common mode of exercising discretion that pervades the entire company," since "it is quite unbelievable that all managers would exercise their discretion in a common way without some common direction." *Ruiz*, 93 F. Supp. 2d at 289 (citing *Dukes*, 564 U.S. at 356).[17]  *Accord*, *Mendez v. U.S. Nonwovens Corp.*, 314 F.R.D. at 42.  "Perhaps even before *Dukes*, but certainly after that decision, . . . evidence [of such a *de facto* policy] entails either (i) comprehensive statistical analyses or (ii) anecdotal evidence that reaches a certain critical mass.  *Ruiz*, 93 F. Supp. 2d at 289.

As discussed above, plaintiffs have attempted to establish that Stewart's Shops had a systematic practice of requiring or encouraging off-the-clock work by its employees primarily through anecdotal evidence from the three named plaintiffs and 18 additional former employees, corroborated to some extent with store alarm records. Defense counsel challenged the evidence presented by plaintiffs, in part, by pointing out inconsistencies between their various statements.  (*See, e.g.*, Def.'s Br. at 4-6, 9-10).  For example, plaintiff Potter testified during his deposition that he changed his

---

[17] "As the Supreme Court pointed out, in a company with facially valid policies and wide discretion it is to be presumed that 'most managers' operate in accordance with the law, rather than in violation of it. . . . . 'In such a company, demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's.'" *Ruiz*, 93 F. Supp. 2d at 291 (quoting *Dukes*, 564 U.S. at 355-56).

schedule/time sheet only about ten to 15 percent of the time he took longer than 15 minutes to close the store because he "wasn't really worried about the time." (Potter Dep. at 71-73 ("I know probably most of the people that I've worked with didn't change their time either")).[18]  Defendant also argues that the time a store alarm was set did not necessarily show who was working up to that time and pointed out an instance where store alarm data was inconsistent with the claims about off-the-clock work by named plaintiff, Astrid Halten, and two opt-in plaintiffs.[19]  (Def.'s Br. at 7-8, 9-10; Polsinelli Att'y Decl. ¶¶ 59-69; *see also* Halten Decl. ¶ 38 et. seq.).

More significantly, defendant has submitted declarations from 50 current Stewart's Shops employees who assert that the deviations from defendant's express wage and hour policies did not occur at the stores where they worked.[20]  Those

---

[18] As noted above, plaintiff Potter, who worked as a partner and Assistant Manager in several stores, also testified that he was never told by a manager that he could not get paid for additional time that he worked. (Potter Dep. at 148, 157).  However, Mr. Potter claimed, in his declaration, that he was discouraged from routinely claiming additional hours because of a concern that he would be disciplined. (Potter Decl. ¶ 14).

[19] The alarm reports would seem to provide relevant, but not dispositive evidence of how late a particular Stewart's Shop employee worked while closing a store.  However, the nuances of how probative such evidence would be is not material to my decision as to whether plaintiffs have established the commonality/typicality/predominance elements under Rule 23.

[20] Like plaintiffs' declarations, those submitted by defendant were clearly modified by or for each employee from a standard template, so many of them contain considerable identical language.  "While 'the mere fact that the declarations submitted by Plaintiff are virtually identical does not ipso facto render them incompetent' . . . , it severely undercuts their persuasive value." *Augustyniak v. Lowe's Home Ctr., LLC*, 14-CV-488, 2016 U.S. Dist. LEXIS 15112, at *9-10 (W.D.N.Y. Feb. 8, 2016) (collecting cases).  The plaintiffs' declarations were made under penalty of perjury, but several of the declarations emphasized in plaintiffs' briefs offered general observations about other employees or managers that did not appear to be based on first-hand knowledge.  (See, e.g., Lotto Decl. ¶¶ 9, 10, 12, 17; Kruger Decl. ¶¶ 8, 12, 18).  *See, e.g., Eng-Hatcher v. Sprint Nextel Corp.*, 2009 WL 7311383, at *3 (deposition relying on "limited

employees with experience closing a store uniformly stated that the 15 to 30 minutes

scheduled for closing was generally sufficient for them to complete the necessary

tasks.[21]  If additional time was sometimes required, they would change their time

sheets accordingly.  Each declarant said, in words or substance, "I have always been

paid for the extra period, if any, I work."  (*See, e.g.*, Breason Decl. ¶ 10, Dkt. No. 71-2

at 56-57; Doran Decl. ¶ 10, Dkt. No. 71-2 at 85; Green Decl. ¶ 11, Dkt. No. 71-2 at

108).

   Almost all of the defendant's declarants corroborated the statement of Stewart's

Shops Director of Personnel that the "Hand Off - Don't Run Off" language on the

store schedules was simply meant to recommend a brief exchange of information

between partners during a shift change, and did not require or encourage off-the-clock

work at the start of each shift.  (Carnevale Decl. ¶¶ 25-26, 28).  Most stated that the

---

anecdotal hearsay does not persuasively show that Sprint likely has a common plan . . . requiring
Retail Consultants to work uncompensated overtime").  While the defendant's declarations were
not given under penalty of perjury, the declarants attested that their statements were "true and
correct and based upon my personal knowledge."  Plaintiffs argue that current employees may
fear retaliation if they provide information useful to plaintiffs or may be biased in favor of
defendant because Stewart's Shops employees own 40% of the company.  (Pl.s' Br. at 24;  Pl.s'
Reply Br. at 9 & n.7).  On the other hand, most, if not all of the named and opt-in plaintiffs are
former employees who obviously have a financial interest in this litigation, and may be biased
against their former employer.  The declarations submitted by the plaintiffs and the defendant
reflect similar deficiencies and comparable possible biases, which the court has taken into
account in assessing their probative value.

   [21] At least seven of the current employees stated that the schedules at their stores allotted
*30* minutes for closing the store generally or on weekends or during the summer months.  (Doran
Decl. ¶ 10; Engler Decl. ¶ 10, Dkt. No. 71-2 at 92-93; Hicks Decl. ¶ 11, Dkt. No. 71-2 at 119;
Jones Decl. ¶ 10, Dkt. No. 71-2 at 129-30; Turner Decl. ¶ 10, Dkt. No. 71-3 at 44-45; Winchell
Decl. ¶ 11, Dkt. No. 71-3 at 60; Worth Decl. ¶ 10, Dkt. No. 71-3 at 63-64; Zinnershine Decl. ¶
10, Dkt. No. 71-3 at 67).

"Hand Off - Don't Run Off" term serves as "a reminder to take a moment to inform the subsequent shift worker *if* there is a unique issue that may need to be addressed during their work period." (*See, e.g.*, Breason Decl. ¶¶ 8-9; Doran Decl. ¶¶ 8-9; Green Decl. ¶¶ 8-9). To the extent declarants estimated the time required for this exchange of information, all but a few stated it took five minutes or less. (*Id.*).[22] More generally, the declarants assert, that Stewart's Shops express policy to compensate employees for all time worked was followed in their stores:

> I have always been compensated for the work that I performed at the store. If my assigned shift begins earlier or ends later than scheduled, I just notify my store manager and amend my time sheet to indicate the exact hours that I worked for that shift. I have always been paid for the extra period, if any that I work. . . . I have never been directed to or encouraged to work off the clock either before my shift starts or after my shift ends.

(*See, e.g.*, Breason Decl. ¶¶ 12-13; Doran Decl. ¶¶ 12-13; Green Decl. ¶¶ 13-14).

Because the anecdotal evidence presented in this case does not document consistent and widespread deviations from Stewart's Shops' formal policy of paying employees for all time worked, the court concludes that the plaintiffs have not proven, by a preponderance, that the de facto practices and policies of which they complain "are sufficiently uniform and pervasive as to warrant class treatment." *Zivali v. AT &*

---

[22] *Cf.* Bushey Decl. ¶¶ 8-9, Dkt. No. 71-2 at 63 (Hand Off - Don't Run Off conversation "lasts approximately 5-15 minutes. I have the ability to change the schedule to reflect this time."); Rawling Decl. ¶¶ 9-10, Dkt. No. 71-3 at 23 (shift change conversation "lasts approximately 5-10 minutes. . . . I have always been compensated for the work that I performed at the store."); Weaver Decl. ¶¶ 9-10, Dkt. No. 71-3 at 56 (Hand Off - Don't Run Off conversation "can last between 5 and 15 minutes. I have the ability to change my time to reflect any additional hours worked if I choose to.").

*T Mobility, LLC*, 784 F. Supp. 2d at 463.  While each side has offered case law supporting their respective positions, this court concludes that the weight of authority supports defendant's position that the plaintiffs have not met their burden to satisfy the Rule 23 elements of commonality, typicality, and predominance.

In *Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, the plaintiffs sought to certify a Rule 23 class action of current and former personal bankers alleging that their former employer failed to pay them overtime. *Id.* at 281-82.  The plaintiffs could not point to formal policies by the defendant regarding overtime and instead relied on anecdotal accounts to establish a *de facto* policy of pressuring bankers to work off the clock.  *Id.* at 291-92.  However, the court found that "even if th[e] number of anecdotal accounts were sufficiently large to confidently be extrapolated to the class as a whole, the contradictions and heterogeneity within the group suggest the lack of a common answer."  *Id.*  For example, while a number of the sample of opt-in plaintiffs "testified to being told by branch managers not to enter any timesheets reflecting more than 40 hours worked . . . , and further testified that they understood these instructions to be the result of broader Citibank policy on overtime pay . . ., [o]ther Plaintiffs received overtime pay in nearly all periods, . . . and could not recall any instances of entering inaccurate timesheets or having their timesheets edited."  *Id*. at 286.

The *Ruiz* court determined that "although the competing pressures not to request overtime and to meet performance targets may have existed at a companywide–and therefore classwide– level, they did not replicate themselves with sufficient uniformity

across the branches to result in a common answer that goes to the ultimate question of liability." *Id*. at 292. Accordingly, the *Ruiz* court found the evidence in the record was "insufficient to demonstrate either common direction or a common mode of exercising discretion, and accordingly [found] an absence of common questions susceptible to classwide proof." *Id*. at 295 ("the record in its totality shows that Citibank's formal, companywide policies are entirely legal and appropriate, and that there is no evidence of a common plan or scheme to subvert these policies"). Similarly, in this case, while plaintiffs contend that Stewart's Shops store managers had common incentives to avoid employee overtime and stay within a salary budget, the 50 declarations offered by defendant indicate that those purported incentives did not consistently motivate individual store managers to ignore Stewart's Shops express policy of paying employees for all time worked.

*Fernandez v. Wells Fargo Bank, N.A.*, Nos. 12 Civ. 7193, 12 Civ. 7194, 2013 WL 4540521 (S.D.N.Y. Aug. 28, 2013) was a wage and hour case in which plaintiffs claimed that they were subjected to a de facto "'dual edge' policy of limiting available overtime while also delegating 'onerous' responsibilities that could not be met in a 40-hour workweek." *Id*. at 2. Plaintiffs also alleged that "[e]ach shift working the branches' opening or closing required approximately 30 minutes of work for which plaintiffs 'typically' were not compensated." *Id*. Wells Fargo offered evidence, as did Stewart's Shops in this case, that the employer repeatedly instructed its employees that they should record all time worked and were responsible for submitting timely and

accurate records of hours worked. *Id.* at *6.[23]   The court in *Wells Fargo* denied the

motion for class certification, finding that "Plaintiffs have not established by a

preponderance of the evidence that the[y] . . . were subject to a common, New

York-wide policy to limit their recorded hours or require off-the-clock work."  *Id.* at

*5 ("[l]imited, anecdotal evidence concerning a de facto compensation policy is

insufficient to establish commonality")[24] (*citing Eng-Hatcher v. Sprint Nextel Corp.*,

2009 WL 7311383, at *3) (denying FLSA and Rule 23 certification)).  Both

*Fernandez* and *Eng*[25] support this court's conclusion that the anecdotal proof offered

---

[23] As in *Ruiz* and this case, plaintiffs in *Fernandez* could not "cite a specific, concrete, management directive concerning plaintiffs' off-the-clock work or any purported requirement not to record hours worked" and so tried to establish a uniform, de facto policy of requiring off-the-clock work.  *Fernandez*, 2013 WL 4540521, at *6.

[24] For example, the court concluded that inconsistent statements of various plaintiffs indicated "that payment for work at opening and closing varied on a case-by-case, incident-by-incident basis, and were not determined by a single, common New York-wide policy."  *Id.* at 11.

[25] In *Eng*, it was undisputed that Sprint maintained an official corporate policy that mandated that employees be paid for all overtime worked.  *Eng*, 2009 WL 7311383, at *3. Plaintiff contended that Sprint had a defacto policy that pressured its sales consultants to work off the clock which developed as a result of Sprint policies to limit labor costs and discourage overtime work, and its bonus system that rewarded managers who exceeded sales quotas.  *Id.* The named plaintiff in *Eng* identified five other employees who also did not receive pay for overtime worked.  *Id.*  "Defendants provided more than a dozen affidavits to support their argument that Plaintiff is not similarly situated to her potential class members based on the evidence provided."  *Id.* at *4.  The *Eng* court found that "Plaintiff has not presented persuasive evidence that it is likely Sprint has a common plan or practice requiring Retail Consultants to work uncompensated overtime at many of its locations nationwide."  *Id.* at *3, *6 ("Even if Plaintiff is able to prove that her managers chose to violate Defendant Sprint's policy and require that she work off-the-clock, she fails to establish that this policy was uniformly applied across the state to all class members.").  As in *Eng*, plaintiffs may have established that managers pressured employees at some of defendant's stores to work off the clock, but, given substantial contrary anecdotal and other evidence offered by defendant, they did not prove a pervasive company-wide de facto plan to violate state wage and hour laws.

by plaintiffs was not, in light of the substantial contrary evidence presented by defendant, sufficient to establish commonality, typicality, and predominance by a preponderance of the evidence.

In *Mendez v. U.S. Nonwovens Corp.*, 314 F.R.D. at 36, 44-50, District Judge Spatt of the Eastern District of New York found that plaintiff did not satisfy the commonality and predominance requirements for certification of a subclass on a claim that their employer failed to pay overtime and straight wages for off-the-clock work by failing to adjust each employee's scheduled shift to reflect actual time worked, as reflected by an electronic time punch system.[26]  Judge Spatt observed:

> [T]he anecdotal evidence submitted by the Plaintiffs demonstrates that while the Defendants' payroll policies may have resulted in some employees not receiving compensation for all the hours they claimed to have worked, other employees did receive full compensation. These inconsistencies suggest that there was no de facto or informal policy by the Individual Defendants to deny their factory and warehouse workers compensation. Therefore, resolving the employees' claims would require the Court to conduct individual inquiries for each class member to determine the hours he or she legitimately worked and whether he or she was paid appropriate compensation. Such individual determinations suggest a lack of commonality and render a class action inappropriate.

*Mendez*, 314 F.R.D. at 47.[27]  Similarly, the court in *Mendez* found that plaintiffs did

---

[26] The employer in *Mendez* had a procedure by which an employee could raise a complaint, with a supervisor, that the employee worked extra time beyond his scheduled shift, and receive the appropriate extra pay in a separate check. *Id.* at 46.

[27] A Magistrate Judge in *Mendez v. U.S. Nonwovens Corp.*, No. CV125583, 2016 WL 1306551, at *5 (E.D.N.Y. Mar. 31, 2016) later decertified a related FLSA collective based on essentially similar reasoning:

> The Court finds that these inconsistencies [in plaintiffs' claims regarding payment of overtime wages] demonstrate that the collective members are not sufficiently similarly

not establish commonality or predominance with respect to plaintiffs' claim that they

were required to report early for each shift without compensation:

> In light of the sparse evidence offered by the Plaintiffs and the testimony of the
> Individual Defendants explicitly refuting that such a policy existed, the Court
> cannot infer that the Defendants implemented a common policy requiring
> workers to perform uncompensated work before their shifts.

*Mendez*, 314 F.R.D. at 48-49.[28]   As in *Mendez*, the inconsistent anecdotal evidence in

this case about whether employees were compensated for additional time worked

beyond the employee's shift schedule was not sufficient to establish, by a preponder-

ance, a uniform company-wide de facto policy of promoting off-the-clock work.

    This court's conclusion that the plaintiffs in this case have not established a

pervasive de facto policy at Stewart's Shops to encourage or require off-the-clock

work, is also supported by *Zivali v. AT & T Mobility, LLC*, 784 F. Supp. 2d at 460-69,

in which the court granted a motion to decertify an FLSA collective.[29]   Plaintiffs in

---

situated with regard to overtime claims under the FLSA.  The inconsistency of treatment
alleged by each Plaintiff suggests that the claims are not susceptible to resolution based
on generalized proof.  Rather, individualized evidence will be necessary to assess each
claim.

[28] The *Mendez* court did certify a subclass who were allegedly not paid a "spread of hours
premium," but there was much stronger evidence of a uniform policy with respect to that claim.
The employer did not appear to dispute that it did not have a policy in place to pay that premium,
as required by New York law, prior to 2012, and identified at least 40 employees who earned, but
were not paid, such a premium.  *Id. at 54.*

[29] "Although the standard for establishing that the collective members are similarly
situated under the FLSA is less stringent than the Rule 23 commonality standard, courts in this
Circuit have noted that these two standards are functionally similar.  *Mendez v. U.S. Nonwovens
Corp.*, 2016 WL 1306551, at *4 (collecting cases).  Given the "harmony" of principles
animating FLSA collective actions and Rule 23 class actions involving state wage and hour laws,
"it is not mere coincidence that courts facing parallel motions to decertify an FLSA collective

*Zivali* argued that, "notwithstanding Mobility's written policies prohibiting

off-the-clock work, Mobility in fact fosters a corporate "culture" in which employees

are expected to perform certain tasks off-duty. . . .  For their arguments to be pertinent

to certification, however, plaintiffs must demonstrate that the 'practices' and 'culture'

of which they complain are sufficiently uniform and pervasive as to warrant class

treatment." *Id*. at 463.  The court held that plaintiffs failed to sustain their burden

because "the evidence points to an extremely wide range of company practices in the

context of varied factual and employment settings." *Id*. at 464.  For example, the court

noted that "although many plaintiffs claim they were not adequately compensated for

time spent opening and closing Mobility's retail stores, others testified that they were

never or rarely scheduled to work an opening shift; others testified that "pre-punch"

opening activities required only a *de minimis* amount of time; and still others testified

that they obtained time adjustments if pre- or post-punch activities took longer than

usual." *Id*. at 466.[30]

---

action under Section 216(b) and to certify a class action under Rule 23 have tended to allow
either both actions or neither to proceed on a collective basis." *Ruiz*, 93 F. Supp. 3d at 298-99.

[30] The court in *Zivali* also concluded that "the evidence shows substantial variation as to a
key issue in this case:  plaintiffs' use of the adjustment feature to capture otherwise unreported
work.  Some opt-in plaintiffs testified that they understood the adjustment feature; some
acknowledged they regularly received payment for work reported through the adjustment feature;
some testified they felt comfortable asking for adjustments while others did not; some admitted
that adjustments were promptly made when requested; some testified that they did not report
time because they did not believe it was compensable; and some conceded that they performed
off-duty work for their own benefit without informing management." *Id*. at 467.  In the instant
case, there is a similar variation in the declarations submitted by plaintiffs and the defendant with
respect to the effectiveness, in practice, of the system at Stewart's Shops for making manual
changes on time sheets to add extra time worked.

In arguing "that plaintiffs have presented more than enough evidence to meet their *minimal* burden to establish that a jury could credit their testimony and evidence at trial regarding a common class wide practice that predominates over individual issues," (Pl.s' Reply Br. at 4-5 (emphasis added)), counsel relies primarily on two cases from this Circuit–*Briceno v. USI Servs. Grp., Inc.*, No. 09-CV-4252, 2015 WL 5719727 (E.D.N.Y. Sept. 29, 2015), on reconsideration in part, 2016 WL 324964 (E.D.N.Y. Jan. 26, 2016) (declining to reconsider denial of defendants' motion to decertify the FLSA collective), and Senior District Judge McAvoy's opinion, on remand, in *Roach v. T.L. Cannon Corp.*, No. 3:10-CV-591(TJM/DEP), 2015 WL 10818750 (N.D.N.Y. Sept. 4, 2015).  The court first notes that plaintiffs' apparent characterization of its "minimal" burden to establish the predominance element of Rule 23(b) is at odds with the prevailing standard, which imposes a burden to establish that element by a preponderance of the evidence, even if the issue overlaps with the merits of the underlying claim.  Secondly, while the case law in this Circuit regarding class certification is not always easily reconciled, the court concludes that *Roach* and *Briceno* are not as factually analogous to the instant case as the numerous cases cited above which support defendant's position.

The court in *Briceno* denied a motion to decertify an FLSA collective based on claims that defendant USI's payroll and timekeeping policies deprived plaintiffs of

wages and overtime compensation.[31]  2015 WL 5719727, at *8.  The court found:

> The evidence shows that all USI employees were uniformly subject to a single, centralized telephonic timekeeping system, the MITC System, which according to the employees' testimony, was defective and failed to fully account for employees' hours.  Employees were also subject to a primary centralized system for reporting complaints about the MITC system, and there were widespread defects in that system as well, such as complaints going unanswered by management, and problems with the MITC System going uncorrected.  As a result, employees' hours were not properly calculated and the correct wages were not paid, including overtime compensation. Accordingly, the factual similarities between and among the Named Plaintiffs and opt-in Plaintiffs weigh in favor of collective adjudication.

*Id*. at 10.  Unlike *Briceno*, Stewart's Shops did not have a centralized system for modification of time records that employees consistently found to be flawed in accurately reporting time worked or a centralized primary complaint system which employees uniformly found to be unresponsive.  The inconsistent declarations in this case reflect that complaints about deviations from Stewart's Shops facially valid time keeping system were not uniform and varied on a store-by-store basis.  Hence, the off-the-clock claims in the instant case are not amendable to class-wide treatment, even if the claims in *Briceno* were.

The plaintiffs cited Judge McAvoy's recent case in *Roach* in an effort to counter defendant's argument that determining liability on plaintiffs' claims would require the court to engage in fact-finding and mini-trials on a store-by-store basis.  (Pl.s' Br. at

---

[31] Although the defendant attempted to distinguish *Briceno*, in part, because it involved an FLSA decertification motion instead of a Rule 23 certification motion, the court will, based on the authority cited in note 29 above, consider the case to be instructive.  However, the court agrees with the defendant's other arguments distinguishing *Briceno*.  (Def.'s Br. at 29-30).

21).  In finding that the predominance element had been satisfied in connection with a spread-of-hours claim in *Roach*,[32] Judge McAvoy rejected the defense argument "that individual determinations will have to be made as to liability and damages because plaintiffs do not allege that they were invariably denied an extra hour pay when they worked over 10 hours, but only that there were occasions when this occurred."  *Roach*, 2015 WL 10818750, at *5.  However, spread-of-hours claims can typically be established by payroll records.  *Id*. at *4 ("identifying those employees who may fall into [the spread-of-hours] class may require an analysis of each employees' time records).[33]  By contrast, as evidenced by the conflicting declarations submitted by plaintiffs and defendant in this case, liability on the claims involving alleged off-the-clock work would necessarily be determined, not on the basis of payroll or other objective records,[34] but through testimony about deviations from Stewart's Shops

---

[32] A spread-of-hours claim involves not paying hourly, minimum wage employees an extra hour of pay when working a ten-hour day, as was then required by N.Y. Comp. Codes R. & Regs. tit. 12, § 137–1.7.  *Roach*, 2015 WL 10818750, at *2.

[33] *See, e.g.*, *Mendez v. U.S. Nonwovens Corp.*, 314 F.R.D. at 55 ("the question of whether the Defendants began to pay the spread of hours premium after this lawsuit was commenced in 2012 . . .  can be resolved easily by reviewing a class member's payroll records to determine if he or she was in fact paid a spread of hours wage, [hence,] it does not affect the commonality requirement, nor does it render the case unsuitable for class treatment") (citation omitted).  As noted above, the court in *Mendez* certified a subclass on a spread of hours claim, but denied certification on an off-the-clock claim.  *See also Morangelli v. Chemed Corp.*, 922 F. Supp. 2d at 308 ("[d]ifferences between plaintiffs may often interfere with common proof but where, as here, documentary evidence allows for class-wide determinations of these issues, certification remains appropriate").

[34] As noted above, alarm records from Stewart's Shops stores may or may not provide corroboration of employee testimony about how long they worked closing a store, but they are certainly not dispositive documentary evidence of how long a particular employee worked on a given date.

express time keeping policies on a store-by-store basis.  Hence, plaintiffs reliance on Judge McAvoy's analysis of predominance in the context of a spread-of-hours claim does not undermine the authority of the numerous cases cited above involving off-the-clock claims.

### III.   Uniform-Maintenance Claims

As noted above, plaintiffs also allege that they were denied uniform maintenance pay, under N.Y.C.R.R. § 146-1.7, because Stewart's Shops did not provide them with a number of "wash and wear" uniforms "equal" to the number of days per week they regularly worked, and did not compensate them for maintaining or laundering the uniforms.  (Pl.s' Br. at 9)  Plaintiffs move to certify a subclass with respect to this claim consisting of  "all persons who work or have worked as a non-exempt employee for defendant in one of its convenience stores located in the State of New York in the past six years and . . . who have been denied uniform maintenance pay under State law."

Under the 2011 New York State Hospitality Wage Order, an employer is not required to pay the weekly uniform maintenance pay when the required uniforms: (1) are made of "wash and wear" materials; (2) may be routinely washed and dried with other personal garments; (3) do not require ironing, dry cleaning, daily washing, commercial laundering, or other special treatment; and (4) "are furnished to the employee in sufficient number . . . consistent with the average number of days per week worked by the employee."  12 N.Y.C.R.R. § 146-1.7(b).  The parties appear to

agree that the key issue with respect to plaintiffs' uniform-maintenance claim is whether Stewart's Shops complied with the exception relating to wash and wear uniforms.

Plaintiffs cite no authority for their interpretation that subparagraph 4 of this regulation requires an employer to provide a number of wash and wear uniforms *equal* to the number of days per week an employee regularly worked.  The defendant advocates a more literal interpretation of the requirement, focusing on whether the number of uniforms provided is "sufficient" in light of the average number of days worked per week by a particular employee.  (Def.'s Br. at 17-18).  Given that the authors of the Hospitality Wage Order, if they so intended, could have drafted a bright-line standard such as that suggested by the plaintiffs, the court concludes that it must apply the more subjective language of § 146-1.7(b)(4), as written.

The court concludes that plaintiffs' definition of the subclass relating to their uniform-maintenance claim is an impermissible "fail-safe" claim, and the court is not able to craft an alternative definition of the class that would be ascertainable and not overly broad.  Moreover, the court finds that the conflicting evidence submitted by the parties in this case do not adequately support plaintiffs' claim that defendant had a company-wide policy that violated the uniform maintenance regulations, and that the relevant issues amenable to class-wide determination do not predominate over those that would require individualized determinations.  Accordingly, the court recommends against certifying a class relating to plaintiffs' uniform-maintenance claims.

### A.    Ascertainability

"A class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case." *Brecher v. Republic of Argentina*, 806 F.3d 22, 24-25 (2d Cir. 2015).  Defendant argues that plaintiffs' proposed subclass relating to the uniform-maintenance claim is not ascertainable and is an impermissible "fail safe" class.  As explained in *Hicks v. T.L. Cannon Corp.*, 35 F. Supp. 3d 329, 356-57 (W.D.N.Y. 2014):

> "A fail-safe class is one whose definition 'shields the putative class members from receiving an adverse judgment. . . .'" . . . "In a fail-safe class, either the class members win or, by virtue of losing, they are not in the class, and therefore not bound by the judgment.  A proposed 'fail-safe' class should not be certified because it is unfair to defendants, it prevents an adverse judgment being entered against plaintiffs, and it is unmanageable because the members of the class could only be known after a determination of liability."

(citing, *inter alia*, *Mazzei v. Money Store*, 288 F.R.D. 45, 55 (S.D.N.Y. 2012)).  A fail-safe class is usually defined in terms of a "legal injury,"[35] sometimes by reference to a particular statute, regulation, or contract that has been allegedly violated or breached.[36]  A class defined in this fashion "begs the very legal question at issue in [the] case" and

---

[35] *In re: Libor-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262, 2016 WL 2851333, at *2 (S.D.N.Y. May 13, 2016).

[36] *See, e.g. Hicks*, 35 F. Supp. 3d at 356-57 (subclass of employees "who were not provided wage statements listing allowances claimed by Applebee's as required by 12 N.Y.C.R.R. §§ 137-2.2" had some fail-safe qualities); *Jones-Turner v. Yellow Enter. Sys., LLC*, No. 3:07-CV-218-S, 2011 U.S. Dist. LEXIS 118564, at *8-9 (W.D. Ky. Oct. 11, 2011) (class of employees "who were not granted meal breaks in accordance with KRS 337.355" is an improper fail-safe class).

is "unworkable" because "the class definition depends upon a legal determination that has not yet been made[,]" and it is hard to understand "how anyone, let alone these particular proposed class members, can know whether they fall within this class." *de la Cruz v. Gill Corn Farms, Inc.*, No. 03-CV-1133 (TJM), 2005 WL 5419056, at *6 (N.D.N.Y. Jan. 25, 2005).

Plaintiffs' proposed subclass of Stewart's Shops employees "who have been denied uniform maintenance pay under State law" is an unworkable fail-safe class that is not ascertainable. Whether an employee, who was provided fewer uniforms than the average number of days per week he/she worked, received a "sufficient number" under N.Y.C.R.R. § 146-1.7(b)(4) is an issue that would need to be determined on the merits and that should not be incorporated into the class definition. Moreover, determination of who would be included in this subclass, as defined by plaintiff, cannot be determined by objective criteria, but would require a subjective determination of "sufficien[cy]" that would require a mini-hearing on the merits for each employee, or at least on a store-by-store basis.

In arguing that plaintiffs' proposed subclasses relating to their NYLL are ascertainable, counsel cites *Flores v. Anjost Corp.*, 284 F.R.D. 112, 122-23 (S.D.N.Y. 2012), which certified, *inter alia*, a sub- class of "all current and former delivery and retail employees for the uniform claims from March 7, 2005 until the present." *Id*. at 128. Finding that "certification is routinely granted where the proposed class definition relies in part on the consideration of the defendants' alleged liability[,]" the

45

*Flores* court rejected the defense argument that it "'would be forced to conduct mini-trials with[] respect to each non-exempt employee' to decide if that employee . . . was improperly charged for a uniform[.]" *Id.* at 123 (citing *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 341-42 (S.D.N.Y. 2004). However, in reaching this holding, the *Flores* court noted that the certified "class can clearly be ascertained by objective documentation, such as Defendants' employee payroll records and wage statements . . .; no subjective criteria is required to determine the class' contours." *Id.* at 123. While the question of whether an employee in *Flores* was charged for a uniform could be objectively determined from payroll records, the determination of whether each Stewart's Shops employee got a "sufficient" number of uniforms is subjective and not determinable from any objective record. Even if the issue in this case was simply how many uniforms employees received, defendant has no record showing that (Def.'s Br. at 17) and, as discussed below, the evidence presented suggests that the number of uniforms received by Stewart's Shops employees varied widely. Accordingly, this court finds that *Flores* does not support a finding that the proposed subclass relating to the uniform-maintenance claim in this case is ascertainable and not an improper fail-safe class.[37]

---

[37] Plaintiffs also cite three of a line of cases which, in the context of approving class settlements involving New York City restaurant workers, conditionally certified classes in connection with claims, *inter alia*, for the cost of purchasing and laundering uniforms under the NYLL. (Pl.s' Bf. at 13, citing *Reyes v. Buddha-Bar NYC*, No. 08 CIV. 02494, 2009 WL 5841177, at *2 (S.D.N.Y. May 28, 2009); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 CIV.4270, 2009 WL 5851465, at *3 (S.D.N.Y. Mar. 31, 2009); *DeMunecas v. Bold Food, LLC*, No. 09 CIV. 00440, 2010 WL 2399345, at *1 (S.D.N.Y. Apr. 19, 2010)). These cases all involved more broadly defined classes which did not reference particular legal standards

To the extent a plaintiff proposes an improper fail-safe class, courts, when they can, often redefine the class to overcome that problem.  *See, e.g.*, *Hicks v. T.L. Cannon Corp.*, 35 F. Supp. 3d at 357 ("'Despite a fail-safe class definition, courts have the discretion 'to construe the complaint or redefine the class to bring it within the scope of Rule 23. . . .'" (citing *Mazzei v. Money Store*, 288 F.R.D. at 55)).  However, even as the court noted in *Flores*, 284 F.R.D. at 121, a class may not be defined too broadly, such that it would contain "a great many persons who have suffered no injury at the hands of the defendant."  *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009).[38]  In *Hicks*, the court redefined, *inter alia*, a proposed subclass with "fail-safe qualities"–employees "who were not provided wage notices that included the tip

---

under the NYLL, so did not involve the same issues of ascertainability as the subclass defined by plaintiffs in this case.  See, e.g., *DeMunecas*, 2010 WL 2399345, at *1 (conditionally certify class of "[a]ll servers, runners, bussers, and bartenders who work or have worked at Bar Americain, Mesa Grill, and/or Bolo in New York City for 30 days or more between January 15, 2003 and September 23, 2009").  While these cases did not discuss Rule 23 certification issues at length, the fact that they certified broader classes of employees suggest that there was stronger evidence, than there is in this case, that the employers had consistent, company-wide policies for its employees with regard to work uniforms.  Moreover, because the cases cited by plaintiff all involved employees who were required to purchase uniforms, the wash and wear exception did not seem to be an issue, as it is in this case.  Accordingly, these cases no not support certification of a subclass of Stewart's Shops employees with respect to their uniform-maintenance claim.

[38] The Second Circuit has held that a Rule 23 "class must . . . be defined in such a way that anyone within it would have standing."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263-64 (2d Cir. 2006).  The Seventh Circuit, finding that "a class will often include persons who have not been injured by the defendant's conduct" has explained that cases like *Denney* discussing standing "focus on the class definition; if the definition is so broad that it sweeps within it persons who could not have been injured by the defendant's conduct, it is too broad."  *Kohen*, 571 F.3d at 677 ("A related point is that a class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant.").

credit as required by 12 N.Y.C.R.R. §§ 146–1.3; 146–2.2"– as "all current and former tipped employees working for Applebee's after January 1, 2011 (but excluding those who were hired after June 2013)."  The *Hicks* court was able to revise and broaden the proposed class definition based on the evidence "that [the defendant employer] has uniform policies regarding tip-credit notification and payment of minimum wage that apply to all employees at all locations."  *Hicks*, 35 F. Supp. 3d at 356, 358.

As discussed below, the competing evidence presented by the parties in this case does not establish that Stewart's Shops had a pervasive policy to deny employees a sufficient number of wash and wear uniforms consistent with the number of days worked per week.  The evidence submitted in this case indicates that a broader class of all non-exempt employees who worked in Stewart's Shops stores would encompass a large number of employees who were not damaged by a violation of the uniform maintenance provisions of the New York Hospitality Wage Order.  Accordingly, the court cannot remedy the defects in plaintiffs' proposed definition of the subclass relating to its uniform-maintenance claims.

### B.    Predominance

This court has been unable to craft a definition of a subclass that would allow a class-wide determination of whether Stewart's Shops provided a "sufficient" number of uniforms to its cashier/clerks in relation to their average number of days worked per week.  Moreover, the competing declarations submitted by the parties do not sufficiently support plaintiffs' claim that the defendant had a company-wide policy of

issuing a particular number of uniforms to part-time or full-time workers.  Hence, the court concludes that the issues relating to plaintiffs' uniform-maintenance claim that are amenable to class-wide resolution do not predominate over the liability issues that would need to be resolved on an individualized or store-by-store basis.

Plaintiffs claim that Stewart's Shops had a policy of providing one or two wash and wear uniforms to part-time employees and two or three uniforms to full-time employees.[39]  The evidence cited by plaintiffs' counsel to support this contention are the declarations of former managers Monica Kruger (¶¶ 20-21) and David Lotto (¶¶ 25-26) that they were instructed to distribute that number of uniforms, and the declarations of approximately 16 other named or opt-in plaintiffs who claim that they received two or three uniforms.  (Pl.s' Reply Bf. at 9 & n.6 (citing declarations).  Most of plaintiffs' declarants confirmed that they were required to launder their uniforms at home, and were not paid by defendant for uniform maintenance; but none stated that the number of uniforms provided was not "sufficient."  (*See, e.g.*, Potter Decl. ¶ 21).

Defendant does not claim that Stewart's Shops paid its employees for maintenance of company uniforms–wash and wear polo shirts or fleece or other tops with the company logo.  But its Director of Personnel, Anthony Carnevale, claims that the defendant's policy was to provide employees with a sufficient number of uniforms, consistent with the average number of days worked per week.  (Carnevale Decl. ¶ 29). Carnevale also asserted that "[i]t is Stewart's policy that if any employee needs any

---

[39] Plaintiffs do not contend that they were charged by defendant for these uniforms.

additional uniform items, the items are made available to the stores as needed."
(*Id.*).[40]

Defendant submitted 50 declarations from current employees. (Dkt. Nos. 71-2, 71-3). Approximately 22 of the current employees stated that they received two or three uniforms from Stewart's Shops initially. However, another 20 of those employees stated that they received more than five uniforms from defendant, and another nine or so stated that they accumulated more than five uniforms over their years of employment. This provides considerable corroboration for Mr. Carnevale's claim that Stewart's Shops provided additional uniforms to employees who felt that the number provided initially was not sufficient in light of their work schedules.[41] Most of these current employees noted that the uniforms are of a wash and wear type and "are easily laundered with my normal clothes at home." (*See, e.g.*, Breason Decl. ¶ 15; Doran Decl. ¶ 15; Green Decl. ¶ 16).

Overall, the evidence presented to date does not establish, by a preponderance, that Stewart's Shops had a pervasive policy to deny its employees a "sufficient" number of wash and wear uniforms consistent with the average number of days worked per week. Even if the court were to focus on whether Stewart's Shops

---

[40] In his prior deposition and interrogatory responses, Mr. Carnevale stated that Stewart's Shops had an unwritten policy to provide employees with the same number of uniforms as the individual is regularly scheduled to work. (Carnevale Dep. at 130-31, Dkt. No. 63-7).

[41] Plaintiff Potter testified that, although no one ever told him he could not get additional uniform shirts, he tried to order additional uniforms on several occasions and never received them. (Potter Dep. at 151-53, 160-61).

consistently provided employees with a number of uniforms *equal* to the average number of days worked, there is enough conflicting evidence from the defense declarations to indicate that the practice varied significantly from store to store or even employee to employee.[42]  Accordingly, this court concludes that, with respect to the uniform-maintenance claims, plaintiffs have not established, by a preponderance of the evidence, that questions of law or fact that can be determined on a class-wide basis predominate over questions that must be resolved on an individual or store-by-store basis.[43]

## IV.   Claim for Call-In Pay

As noted above, plaintiffs contend they were denied "call-in pay" under New

---

[42] As noted earlier, Stewart's Shops does not maintain any records that would reflect how many uniforms were provided to particular employees.

[43] The Supreme Court's recent decision in *Tyson Foods, Inc. v. Bouaphakeo*, __ U.S. __, 136 S. Ct. 1036 (2016) does not support certification of a class relating to plaintiffs' uniform-maintenance claim.  That class action involved allegations by meat processing employees that their employer violated the FLSA when it withheld overtime wages for the time employees spent "donning and doffing protective equipment."  *Id*. at 136 S. Ct. at 1041. To establish the requisite injury, each employee had to show that "the amount of time spent donning and doffing, when added to his or her regular hours, amounted to more than 40 hours in a given week."  *Id*. at 1046. The employer contended that, to establish those injuries, plaintiffs were required to make individualized inquiries into employee-specific time records that would overwhelm the class-wide inquiries.  *Id*.  The employees rebutted that contention by asserting that they could prove injury on a class-wide basis by relying on a representative sample of employees and assuming that each class member "donned and doffed for the same average time observed" in that sample.  *Id*.  The Tyson court agreed with the employees and found that they could use representative evidence to prove class-wide liability so long as they first demonstrated that "each class member could have relied on that sample to establish liability if he or she had brought an individual action."  *Id*. at 1046-47.  Plaintiffs in this case have not provided any statistical or other objective basis for determining, on a class-wide basis, that Stewart's Shops did not provide its clerk/cashiers with a "sufficient" number of uniforms consistent with the average number of days worked per week.  Hence, the *Tyson* case provides no support for plaintiffs' position.

York's Hospitality Industry Wage Order, 12 N.Y.C.R.R. § 146-1.5, because they were

not paid for a minimum of three hours when called in to the store on their days off for

irregularly scheduled store meetings.  The Wage Order provides, in pertinent part:

> (a) An employee who by request or permission of the employer reports for duty
> on any day, whether or not assigned to actual work, shall be paid at the
> applicable wage rate:
>> (1) for at least three hours for one shift, or the number of hours in the
>> regularly scheduled shift, whichever is less.

12 N.Y.C.R.R. § 146-1.5(a)(1).  The parties agree that an employee is not entitled to

call-in pay for "regularly" scheduled shifts or meetings.  The Wage Order defines a

"regularly scheduled shift" as a "fixed, repeating shift that an employee normally

works on the same day of each week." 12 N.Y.C.R.R. § 146-1.5(d). This definition

further provides: "If an employee's total hours worked or scheduled to work on a

given day of the week change from week to week, there is no regularly scheduled

shift." *Id*.  A New York State Department of Labor Opinion Letter provides that a

regular monthly staff meeting would not likely be considered within the definition of

the term "regularly scheduled shift" because of its infrequency, but "a prescheduled

weekly staff meeting, on the other hand, is likely to fall within the meaning of the term

'regularly scheduled shift' based on its frequency."  NYS DOL Nov. 3, 2010 Op. Ltr.

(Dkt. No. 29-8).

    In support of their motion for class certification, plaintiffs submitted 19

declarations of former employees who stated that they and their co-workers were

never paid call-in pay although they attended mandatory store meetings every week or

52

every other week, often on their days off, on days and times that fluctuated and were not predictable.  (Pl.s' Reply Br. at 7 & n.5 (citing declarations)).  The declarations of 50 current Stewart's Shops employees submitted by defendant did not address the issue of mandatory store meetings and so did not contradict the declarations of the plaintiffs.[44]

Defendant's Director of Personnel, Anthony Carnevale, acknowledged that Stewart's Shops had an unwritten policy of conducting weekly store meetings for all employees, but that it was not required that they always be scheduled on the same day of the week or the same time.  (Carnevale Dep. at 134-35 ("[t]he day or the time could change . . . [i]f it was in the best interests of the partners . . .")).  Defendant's policy was that its employees would be paid only for the actual time of the meeting they attended; Mr. Carnevale believed that additional call-in pay was not required because the day and time of the meeting was listed, in advance, on the weekly store schedule. (Carnevale Dep. at 67, 88-93).  In response to defendant's motion to dismiss, Judge McAvoy ruled that plaintiff Gregory stated a plausible claim for call-in pay relating to two particular mandatory meetings, rejecting defendant's argument that she was not entitled to call-in pay, as a matter of law, because Stewart's Shops prescheduled meetings for its employees on a weekly basis.   (3/1/15 D&O at 13-14).

The court concludes that, in the absence of evidence from the defendant contradicting plaintiffs' key factual assertions supporting their claims for call-in pay,

---

[44] The defense declarations were generally dated as of March 2014, before plaintiffs first asserted a claim for call-in pay in April 2014, in their first Amended Complaint (Dkt. No. 25).

plaintiffs have sustained their burden of establishing the elements required for class certification with respect to this claim.  However, the court finds that it is necessary to modify plaintiffs' definition of this subclass to avoid certifying a "fail-safe" class and to satisfy the ascertainability requirement.

## A.    Ascertainability

Plaintiffs propose a subclass of all persons who work or have worked as a non-exempt employee for defendant in one of its convenience stores located in the State of New York in the past six years and "who have been denied call in pay under State law."  Plaintiffs' definition of this subclass in terms of the state law violation raises concerns similar to those the court noted with the plaintiffs' definition of the subclass for the uniform-maintenance claims–that is appears to be a "fail-safe" class that may not be ascertainable.  However, unlike the uniform maintenance subclass, the call-in pay subclass can be objectively identified from documentary evidence.  Mr. Carnevale acknowledged that the dates and times of store meetings were noted on a store's weekly schedule, which also shows the scheduled regular shifts for each employee.  Each employee's time and payroll records would show whether they were paid for less than three hours for the period when the meeting was held, which would document that they were not paid the minimum of three hours of call-in pay.[45]

Moreover, the evidence presented by the defendant in this case did not

---

[45] See Flores v. Anjost Corp., 284 F.R.D. at 123 (certifying subclasses that "can clearly be ascertained by objective documentation, such as Defendants' employee payroll records and wage statements").

significantly contradict the key factual assertions made by plaintiffs in support of their call-in pay claim, as it did for plaintiffs' other NYLL claims.  Hence, the court is better able to redefine the class in a way that will avoid the problems of a "fail-safe" class, but not make it clearly over-broad.  The court would propose modifying the definition of this subclass to include any non-exempt employee for defendant in one of its convenience stores located in the State of New York in the past six years who attended a store meeting that was not scheduled during one of the employee's regular work shifts for that week and who was not paid for a minimum of three hours at their applicable wage rate.[46]  It is possible that this modified subclass could cover employees who worked at stores where the date and time of the weekly store meeting did not vary, and who would, therefore, not be entitled to call-in pay for "regularly scheduled" meetings.  However, because defendant has offered no evidence to contradict the assertion of the plaintiffs' declarants that the day and time of store meetings fluctuated, the court does not believe the subclass, as redefined, is overly broad, based on the authority cited in note 38 above.

## B.    Numerosity

Usually, a proposed class consisting of over forty members satisfies the numerosity requirement.  *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473,

---

[46] The court recognizes that feedback from the parties might suggest a different definition of this subclass, but the parties may provide that feedback in the context of any objections to this report-recommendation to Judge McAvoy.

483 (2d Cir. 1995) (numerosity is presumed where a putative class has forty or more members)).  Plaintiffs have submitted declarations from at least 19 former Stewart's Shops employees who stated that they and their co-workers were called in for irregularly scheduled, mandatory store meetings, often when they were not otherwise scheduled to work, and did not receive call-in pay.  Two of those declarants, David Lotto and Monica Kruger, worked at a total of 20 different stores, each staffed by between eight and ten cashier/clerks, and had experience as managers which gave them access to the time records that would confirm that other employees did not receive call-in pay.  (Lotto Decl. ¶¶ 2-4, 20-21; Kruger Decl. ¶¶ 2-4, 15-16). Plaintiffs' declarations alone would indicate that well more than 40 former employees were improperly deprived of call-in pay.[47]  (See Pl.s' Reply Br. at 5-6, 7-8).  Given the absence of contradictory evidence from the defendant, and the admission of its Director of Personnel that Stewart's Shops "very rarely" paid call-in pay (Carnevale Dep. at 72), it is reasonable to infer that a large percentage of the 4,000 current (and,

---

[47] The court acknowledges that, so far, only one named plaintiff has pled an adequate claim for call-in pay supported by the specification of at least one particular date on which she attended a store meeting and did not receive call-in pay.  (See 3/1/2015 D&O at 14).  Since filing the Second Amended Complaint (¶ 83), which specifies additional meetings for which plaintiff Gregory was denied call-in pay, another named plaintiff, Astrid Halten, has submitted a declaration identifying specific dates on which she attended meetings for which she was not given call-in pay.  (See, e.g., Halten Decl. ¶¶ 44, 46, 50).  While the other declarations submitted by plaintiff do not specify particular occasions when the former employees were deprived of call-in pay, that deficiency presumably will be addressed once plaintiffs' counsel obtains and analyzes additional discovery including store schedules and time and payroll records for other employees. Based on the evidence currently before the court, it appears likely that many more plaintiffs will eventually be able to document specific instances when they were deprived of call-in pay for mandatory meetings.

likely, even more former) clerk/cashiers at Stewart's Shops were deprived of call-in pay.  Accordingly, the court finds that the numerosity element of Rule 23 is satisfied for the modified subclass relating to plaintiffs' claims for call-in pay.

### C.   Commonality/Typicality/Predominance

Because, as noted above, the factors of commonality, typicality, and predominance tend to overlap, the court will consider them together.  Defendant argues, generally, that the three named plaintiffs had disparate work experience with Stewart's Shops and assert claims that are not typical as between them, much less among other potential class members.  (Def.'s Br. at 23-24).  The court finds, at least in the context of plaintiffs' call-in pay claims, that one or more of the named plaintiffs are adequate representatives of the class who raise typical claims for call-in pay.[48] Only plaintiff Gregory, a part-time employee for about four months, was found to plead an adequate call-in pay claim.  However, the deficiency in the claims asserted by the other named plaintiffs in the first amended complaint was that they did not specify the date of a particular store meeting for which they were wrongfully denied call-in pay.  (3/1/2015 D&O at 14).  The general claims of 19 other named and opt-in plaintiffs about call-in pay are consistent with plaintiff Gregory's claim, and are not contradicted by evidence presented by the defendant.  As discussed in note 47 above, the court finds that it is likely that, after further analysis of store schedules and time

---

[48] The defendant addresses the Rule 23 factors of typicality and adequacy together.  Accordingly, the court will not separately discuss the adequacy factor under Rule 23(a)(4).  The defendant raises no issue with respect to the adequacy of plaintiffs' counsel.

and pay records, many more plaintiffs will eventually be able to specify instances when they were deprived of call-in pay for mandatory meetings similar to those pled by plaintiff Gregory.

Unlike most of the other state law claims asserted by plaintiffs, the call-in pay claim involve common issues of law and fact that are amenable to objective, class-wide determination and that predominate over issues which may require individualized or store-by-store analysis.  Stewart's Shops acknowledged a company-wide practice of paying employees who attended store meeting only for the time of the meeting and not additional call-in pay, purportedly because store meetings were scheduled in advance on the stores' weekly schedules.[49]  Hence, there does not seem to be any significant variations in how Stewart's Shops handled pay for store meetings, which would facilitate class-wide resolution of the call-in pay claim.[50]

As noted earlier, the issue of when particular employees were improperly denied call-in pay can be objectively determined from store schedules and time and

---

[49] To the extent defendant's argument for not paying call-in pay was not resolved by Judge McAvoy's decision on the motion to dismiss, it can be determined on a class-wide basis.

[50] Plaintiffs allege that, on some occasions, they were not paid at all for attending store meetings.  The court considers any such claim to be more analogous, to and part of, plaintiffs' off-the-clock claims, which are not amenable to class certification.  Otherwise, plaintiffs would risk entangling their call-in pay claim with issues requiring mini-trials on an individual or store-by-store basis that would substantially weaken the prospects for class certification for the call-in pay claim.  For example, determining when an employee was not paid at all for attending a scheduled meeting could not be determined objectively from time and payroll records, while a claim that an employee was paid only for the time of the meeting, but not the minimum three-hour period could be determined from objective records.  See note 51 below.

payroll records.[51]  While the analysis of the relevant records would be arduous and

time-consuming, the fact that the answers to issues relevant to the call-in pay claims

can be gleaned from objective records allows sampling or statistical analysis that

would facilitate class-wide determinations.[52]

One issue that might require analysis on an individualized basis is whether

particular stores conducted "regularly scheduled" weekly store meeting on a day and

time that did not vary, which would likely defeat a claim for call-in pay for employees

at those stores.  However, as noted above, defendant has offered no evidence to

contradict the assertion of the plaintiffs' declarants that the day and time of store

meetings fluctuated, and defendant's Director of Personnel stated that it would be

consistent with Stewart's Shops policy to vary the days and times of store meetings to

accommodate employees.  (Carnevale Dep. at 92, 134-35).  Accordingly, the court

---

[51] Some stores generated agendas for store meetings, but that was not required by
defendant on a company-wide basis.  (Carnevale Dep. at 67).  Store schedules might not be
changed if a store meeting was cancelled or rescheduled, and there were not other records
that would confirm that a scheduled meeting actually occurred.  (Carnevale Dep. at 68, 76, 93).
Stewart's Shops also generally did not have records that confirmed which employees attended a
particular store meeting.  (Carnevale Dep. at 77-78).  Nonetheless, the combination of the store
schedules showing when a meeting was scheduled and payroll records reflecting what was paid
to particular employees during the time of the meeting would provide adequate, objective
documentation for plaintiffs' call-in claims.

[52] To the extent the determination of damages requires more extensive individualized
analysis of the claims of particular plaintiffs, "that is not sufficient to defeat class certification
under Rule 23(b)(3)."  *Roach v. T.L. Cannon Corp.*, 778 F.3d at 405 (the Second Circuit has
previously held that the fact that damages may have to be ascertained on an individual basis was
simply one factor that we had to consider in deciding whether issues susceptible to generalized
proof outweigh individual issues when certifying the case as a whole; we do not read *Comcast
Corp. v. Behrend*, __U.S. __, 133 S. Ct. 1426 (2013) as overruling that precedent).

concludes that possible variations in how particular stores scheduled meetings will not predominate the other crucial liability issues which are amendable to class-wide determination.[53]

### D.   Superiority

The element other than predominance that must be addressed under Rule 23(b) is whether the "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Courts routinely hold that a class action is superior where, as here, potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by the defendants." *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 126 (S.D.N.Y. 2014) (collecting cases finding class action superior for adjudication of wage and hour cases). A class action is not a superior method of litigating the case where "liability for a significant bloc of the class members and damages for the entire class must be decided on an individual basis . . . ." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 148 (2d Cir. 2015). However, based on the current evidence, this court has determined that liability issues relating to the call-in

---

[53] Plaintiffs cite three of a line of cases which, in the context of approving class settlements involving New York City restaurant workers, conditionally certified classes in connection with claims, *inter alia*, for call-in pay under New York's Hospitality Industry Wage Order. (Pl.s' Bf. at 13, citing *Reyes v. Buddha-Bar NYC*, 2009 WL 5841177, at *2; *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *3; *DeMunecas v. Bold Food, LLC*, 2010 WL 2399345, at *1. While these cases do not discuss the Rule 23 requirements in detail, they do hold that plaintiffs satisfied all of the elements for Rule 23 certification.

pay claim that can be adjudicated on a class-wide basis predominate over issues for which individualized analysis may be required, which supports the finding that a class action is the superior method of adjudicating that claim.[54]

## V.   **Wage Theft Protection Act Claim**

### A.   **Introduction**

Section 195 of the New York Labor Law requires that "an employer must 'provide his or her employees, in writing . . . at the time of hiring, and . . . each subsequent year of the employee's employment with the employer, a notice containing [*inter alia*] the rate or rates of pay and basis thereof' and 'the regular hourly rate and overtime rate of pay.'" NYLL § 195(1).  Moreover, "[e]ach time the employer provides such notice to an employee," the employer is required to "obtain from the employee a signed and dated written acknowledgement, . . . of receipt of this notice, which the employer shall preserve and maintain for six years." NYLL § 195(1).  The defendant has asserted an affirmative defense to the wage notification requirement, under NYLL § 198 (1-b), contending it "made complete and timely payment of all wages due."  (Answer to 2d Am. Compl. at 15 (Sixth Defense), Dkt. No. 48; Def.'s Br. at 19).

---

[54] The court recognizes that class certification is "'inherently tentative'"–"[e]ven after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. at 160; Fed. R. Civ. P. 23(c)(1)(C).  The court may consider de-certification of a class if subsequently developed evidence merits reassessment as to whether common issues of law and fact with respect to a claim predominate. *See Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 121 (E.D.N.Y. 2011).

According to defendant's Director of Personnel, Stewart's Shops presented employees with compliant wage notices consisting of a full-page sheet of paper containing two identical wage notices, which set forth, among other required information, the employees' regular and overtime pay rates.  (Carnevale Decl. ¶ 30). Moreover, Mr. Carnevale stated that it was the defendant's established practice that one-half of the form be detached and given to the employee, while the other half of the form was retained by Stewart's Shops.  (*Id*.).   The wage notice form contains a confirmation from the employee that "I have been given this pay notice in English . . . ."  (*See, e.g.*, Dkt. No. 74-3).   The vast majority of the 50 current employees who provided declarations stated "[w]hen I was hired, and each year thereafter, I was provided with, and signed a disclosure and wage statement pursuant to the New York State Wage Theft Protection Act."  (*See, e.g.*, Breason Decl. ¶ 6; Doran Decl. ¶ 6 (qualifying the statement with "to the best of my recollection"); Green Decl. ¶ 6).[55]

Plaintiffs appear to acknowledge that defendant issued and had its employees sign annual wage notices complying with NYLL § 195(1).  However, plaintiffs claim that defendant did not follow its own policy, and violated the wage notice requirement, by not physically providing employees with their copy of the notice. (Pl.s' Br. at 16).  Plaintiff Gregory, who worked part-time for Stewart's Shops for a matter of months, testified that she never was given a copy of a wage notice, although

---

[55] Seven of the declarants also expressly stated that they were offered copies of the wage notice; three stated that, to the best of their recollection they retained copies.  (Dkt. Nos. 71-2, 71-3).

she acknowledged signing one.  (Gregory Dep. at 48, 107-09).  Plaintiffs Halten and

Potter acknowledged that they signed multiple wage disclosure forms but could not

recall whether they were given copies.  (Halten Dep. at 41-47; Potter Dep. at 46-54).

Defense counsel represented that Stewart's Shops, at the request of plaintiffs, searched

for and located multiple, original half-sheet notices signed by plaintiffs Gregory and

Potter, which suggests that these plaintiffs had been provided their half of the forms

when they signed them.  (Polsinelli Att'y Decl. ¶¶ 71-73; Carnevale Dep., Exs. 6, 7,

Dkt. No. 63-9 at 63-64).

Plaintiffs' counsel notes that defendant produced copies of wage notices for

opt-in plaintiffs Slater and Miele-Roddy that included both halves of the form,

indicating that the employees were not given their copies.  (Dkt. No. 74-3; Slater Decl.

¶ 20, Dkt. No. 63-16 at 28; Miele-Roddy Decl. ¶ 26, Dkt. No. 63-16 at 51).  With three

exceptions,[56] the other opt-in plaintiffs who discussed wage notices in their

declarations stated that they "believed" that they signed notices but "did not recall"

being given a copy.

The court concludes that plaintiffs have not met their burden of establishing, by

a preponderance of the evidence, the Rule 23 elements of commonality, typicality, and

predominance with respect to their wage notice claim.  Accordingly, this court can

recommend against certification of the proposed subclass relating to this claim

---

[56] Fremire Decl. ¶ 21, Dkt. No. 63-16 at 26 ("I was not given a copy" of the wage notice);
Pease Decl. ¶ 18, Dkt. No. 63-16 at 19 ("I do not believe I was given a copy"); Papadakis Decl. ¶
22, Dkt. No. 63-16 at 31 ("I do not believe I was given a copy").

without addressing the other objections to certification raised by the defendant,

including those raised in its supplemental submission (Dkt Nos. 79, 80).

### B.    Commonality/Typicality/Predominance

It is undisputed that Stewart's Shops, at the appropriate intervals, prepared and

presented to its employees for signature, a two-part form containing identical,

duplicate notices of the wage and other information required by NYLL 195(1).

Defendant's Director of Personnel stated that it was a company-wide policy to

maintain one file copy of the notice and to detach and give the duplicate "Partner

Copy" to the employee.  (*See, e.g.*, Dkt. No. 74-3; Carnevale Decl. ¶ 30).

Based on the authority discussed above, plaintiff bear the burden of establishing

that any alleged departures from Stewart's Shops facially lawful wage notice policies

"are sufficiently uniform and pervasive as to warrant class treatment."  *Zivali v. AT &*

*T Mobility, LLC*, 784 F. Supp. 2d at 463.  Plaintiffs offer testimony or declarations

from only one named plaintiff and three opt-in plaintiffs who definitively state that

they were not given the employee copy of the wage disclosure form.  Defendant

purports to have located the original wage notice to plaintiff Gregory, which is

missing the "Partner Copy," which tends to contradict Ms. Gregory's claims.  The

depositions or declarations of the other plaintiffs and opt-ins who address the wage

notice issue only state that they did not "recall" (or in two instances, "believe") that

they were given a copy of the wage notices that they signed.  While the declarations of

50 current employees submitted by defendant are artfully drafted, most of the

declarants acknowledge being "provided with" wage statements at the appropriate intervals.  The court concludes that plaintiffs have not sustained their burden of proving by a preponderance of the evidence, a pervasive deviation from Stewart's Shops facially valid wage notification policy that would allow a class-wide determination of liability, as opposed to individualized or store-by-store mini-trials.

To some extent, the determination of who received a copy of a wage statement may be determinable from defendant's retained originals of the form.  Certainly, to the extent Stewart's Shops still has both portions of the original two-part wage statement form, that would strongly suggest that the employee was not given a copy.  However, there could be other facts relevant to liability issues–*e.g.*, whether an employee was offered a copy of the wage notice but chose not to take it–which could not be determined from the wage statement, and would require individualized proof.  Moreover, despite considerable discovery to date, the parties have referred to only two original wage statements produced by defendant which had both parts of the notice form–the 2013 forms for opt-in plaintiffs Slater and Miele-Roddy.  (Dkt. No. 74-3).

To the extent the original of a wage notice  retained by Stewart's Shops was missing the "Partner Copy" half of the form, that might indicate a copy was provided to the employee.  However, plaintiffs would likely offer other possible explanations for the missing half of the wage notices, and would likely challenge such documentary evidence with the contrary or ambivalent recollections of particular employees.  Based on the evidence currently before the court, I am not persuaded that the issue of which

65

employees were actually given copies of particular wage forms could be conclusively determined for all or even most of the possible class members from objective documentary evidence. Determining who was given a copy of the wage notice form would largely need to be determined from the recollection of each employee–the type of individualized proof which does not support Rule 23's predominance element.

The one case cited by plaintiff which certified a subclass with respect to a wage notification claim was *Flores v. Anjost Corp.*, 284 F.R.D. at 117, 119, 127, 128. However, the claim in *Flores* was that the employer's standard wage notice was deficient in that it "did not disclose the tip credit allowances taken." The *Flores* court found that plaintiffs "demonstrated commonality and typicality on behalf of the proposed class with regard to their wage statement claims" because the form of the wage statements clearly the "'same for the entire company.'" *Id*. at 127 ("[r]esolution of the legality of the common form of Defendants' wage statements is thus likely to produce common answers for the proposed class as a whole). In this case, unlike *Flores*, the issue is who was and was not given the "Partner Copy" of the Stewart's Shops wage notice form. As discussed above, that key liability issue would need to be resolved largely through subjective, individualized proof, and is not amendable to a class-wide determination.[57]

---

[57] *Hicks v. T.L. Cannon Corp.*, 35 F. Supp. 3d at 357-58, which certified a modified class on a wage notice claim similar to that in *Flores* is also distinguishable. The claim in *Hicks* also involved a deficiency in Applebee's wage notification form that resulted from "uniform policies regarding tip-credit notification . . . that appl[ied] to all employees at all locations." *Id*. at 358.

As noted above, defendant intends to pursue an affirmative defense that, even if Stewart's Shops did not always distribute copies of wage notices, it "made complete and timely payment of all wages due" to the affected employees.  NYLL § 198 (1-b). While the plaintiffs are clearly claiming that they did not receive all wages they were due, the issue of whether Stewart's Shops employees were not paid for work off the clock requires largely individualized proof and is not, as discussed above, amenable to class-wide determination.  Thus, resolution of the affirmative defense to plaintiffs' wage notification claim will implicate the same concerns about individualized proof that precluded class certification of plaintiffs' NYLL off-the-clock claims.   It is clear in this Circuit, that a Rule 23 class action may be denied if individualized issues relating to a defense in a wage and hour action predominates over issues of law and fact common to the proposed class.  *Myers v. Hertz Corp.*, 624 F.3d at 551 (upholding denial of Rule 23(b)(3) class certification of NYLL wage claims of "station managers" for car rental company; the plaintiff did not sustain her burden of establishing that a determination regarding the FLSA exemption for "executive" employees could be based on common or generalized proof, given the apparent variations in the duties of station managers in different locations).

## VI.    Breach of Contract Claim Involving Meal Breaks

In the First Amended Complaint (¶ 5), plaintiffs alleged, upon information and belief, that Stewart's Shop had received a special permit from the New York Department of Labor allowing it to provide its employees a paid meal break of 20

minutes, rather than 30-minute unpaid break otherwise required.  Plaintiffs asserted a claim under the NYLL, alleging that plaintiffs were never actually allowed to take an uninterrupted 20-minute meal break, as "promised" by defendant.  (Am. Compl. ¶¶ 84-86).

In response to defendant's motion to dismiss, Judge McAvoy construed plaintiffs' meal break claim as one for breach of contract, but dismissed the claim without prejudice to replead.  (3/1/15 D&O at 11-12).  Judge McAvoy ruled:

> The fact that "defendant . . . received a special permit from the Department of Labor to allow for paid 20 minute meal breaks under certain circumstances (rather than the unpaid breaks required by law)" does not mean, *a fortiori*, that Defendant entered into an agreement with Plaintiffs to provide these meal breaks. The conclusory contention that Defendant "promised" or "agreed" to "provide the [paid] meal breaks" is insufficient to establish the existence of a binding agreement with Plaintiffs. . . .  Moreover, there are no factual allegations indicating that Plaintiffs incurred damages because of the purported breach of contract.

(*Id*.)

The second amended complaint supplemented plaintiffs' allegations regarding Stewart's Shops purported agreement relating to meal breaks and the damages resulting from the alleged breach of that agreement.  Plaintiffs attached, as Exhibit A, sample copies of the permits issued by the Department of Labor in 2013 allowing the 20-minute meal breaks in each Stewart's Shops location.  (Dkt. No. 47).  The permits stated, *inter alia*, that "[t]he company must pay all employees their agreed rate during this shorter meal period" and "must post this permit conspicuously in your establishment."  (*See, e.g.*, Dkt. No. 47 at 1).  The Second Amended Complaint also

stated:

> Defendant made several verbal promises to plaintiffs regarding this paid break, and, this agreement is memorialized in the Employee Handbook distributed to employees: "NYS has granted Stewart's a permit for shorter 20 minute meal periods for partners working over 6 hours. This allows you to be paid during your break as well as the flexibility to break up the day, while keeping good customer service."

(2d Am. Compl., Third Cause of Action, ¶ 105).

Plaintiffs Potter and Halten alleged that they "worked dozens (if not hundreds) of shifts longer than 6 hours yet were never given an uninterrupted paid break of 20 minutes," and plaintiff Gregory provided specific dates when she worked for more than six hours but was not provided a 20-minute break. (2d Am. Compl. ¶¶ 108-09). Plaintiffs alleged that they, and members of the New York Class they are seeking to certify, were "damaged since they have been deprived an employee benefit that was promised by defendant." (2d Am. Compl. ¶ 110). The complaint demanded "payment in an amount equal to their agreed rate of pay for each shift they worked of at least 6 hours and for which an uninterrupted break of 20 minutes was not given[,]" as well as punitive damages. (2d Am. Compl. ¶¶ 111-12).

Defendant answered the second amended complaint without moving to dismiss the common law breach-of-contract claim. (Dkt. No. 48). Nonetheless, in opposing plaintiffs' motion to certify their breach-of-contract claim as a class action, defendant argues that plaintiffs still have not adequately alleged an agreement with respect to the meal break. Defendant also contends that, because plaintiffs were paid for the 20-

minutes allocated for a meal break, they suffered no "recoverable damages" even if they were deprived of the break.  (Def.'s Br. at 12-13).  Defendant cites no authority for this position other than Judge McAvoy's ruling on their prior motion to dismiss, which was issued before plaintiffs amended the complaint a second time.

Judge McAvoy may rule, *sua sponte* or in connection with a future dispositive motion, that the Second Amended Complaint has not stated a viable breach of contract claim in connection with the allegedly promised paid meal break.  However, the legal issues of whether plaintiffs have established an enforceable contract on the basis of the Department of Labor permits and the related provisions in defendant's Employee Handbook, or whether plaintiffs suffered a compensable injury, may be determined on a class-wide basis without the need for individualized or store-by-store inquiries.[58] While the legal issues raised by defendant may ultimately result in a dismissal of plaintiffs' breach-of-contract claim, they do not provide support for denying certification of a Rule 23 class relating to this claim.  *See Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, __ U.S. __, 133 S. Ct. 1184, 1195-98 (2013).

In *Amgen*, investors, including Connecticut Retirement, brought a putative class action against Amgen and individual officers and directors alleging securities fraud.

_____

[58] As noted below, defendant's Personnel Director has acknowledged that Stewart's Shops had a company-wide policy, based on the permits with the state Department of Labor, to provide employees working a six-hour or longer shift with an uninterrupted, paid 20-minute meal break.  Thus, the issue of whether Stewart's Shops made an enforceable promise with respect to the meal break should not depend significantly on, *e.g.*, promises or representations made to employees on an individual or store-by-store basis.

Amgen argued that the lower courts erred in not requiring plaintiff investors to prove

the materiality of Amgen's alleged misrepresentations before certifying the proposed

class. *Id.* at 1195. The Supreme Court noted:

> Contrary to Amgen's argument, the key question in this case is not whether
> materiality is an essential predicate of the fraud-on-the-market theory;
> indisputably it is. Instead, the pivotal inquiry is whether proof of materiality is
> needed to ensure that the questions of law or fact common to the class will
> "predominate over any questions affecting only individual members" as the
> litigation progresses. Fed. Rule Civ. P. 23(b)(3).

*Id*. Based on the conclusion that the issue of materiality could be "proved through

evidence common to the class," the *Amgen* court held that plaintiff did not need to

establish materiality as a prerequisite to class certification. *Id*. at 1195-96 ("A failure

of proof on the common question of materiality ends the litigation and thus will never

cause individual questions of reliance or anything else to overwhelm questions

common to the class. Therefore, under the plain language of Rule 23(b)(3), plaintiffs

are not required to prove materiality at the class-certification stage."). The legal issues

raised by defendant in opposing plaintiffs' breach-of-contract claim in this case can be

resolved based on class-wide proof. As in *Amgen*, plaintiffs do not need to establish

the elements of their claim at the class certification stage because those elements are

not material to the requirements for Rule 23 certification.

   This court has concerns that other individualized issues of proof relating to the

breach of contract claim–e.g., which employees were not given 20-minute meal

breaks–may ultimately lead to the conclusion that the claim is not amenable to class-

71

wide determination.  However, based on the current record, and the absence of significant evidence contradicting plaintiffs' allegations, the court finds that plaintiffs have established the elements required for certification of their meal-break claim under Rule 23.

### A.    Numerosity

The declarations submitted by the named and opt-in plaintiffs make essentially the same claims with respect to meal breaks:

> It is also my understanding that Stewart's Shop was supposed to give its employees a twenty minute uninterrupted break during any shift that lasted six or more hours. I can confirm that my coworkers and I hardly ever received any break at all when we worked shifts of six hours or more and in the rare instances where a break was given, it was generally five minutes or less when the break was interrupted so we could work a register or help out on some other task around the store.

(*See, e.g.*, Potter Decl. ¶ 17; Lotto Decl. ¶ 22; Kruger Decl. ¶ 17).  As noted above, opt-in plaintiffs Lotto and Kruger worked at a total of 20 stores employing between eight and ten clerk/cashiers each, so their allegations, along with those of the other named and opt-in plaintiffs are more than enough to identify at least 40 viable class members.  Moreover, as discussed below, the defendant has not offered significant proof contradicting plaintiffs' allegations that Stewart's Shops employees were not actually able to take meal breaks; so, based on the current evidence, there would appear to be many other viable class members among the other former and current employees.

### B.   Commonality/Typicality/Predominance/Superiority

During his deposition, defendant's Director of Personnel, Anthony Carnevale,

confirmed that it was a company-wide policy that its employees get an

"uninterrupted," paid 20-minute meal break for every day they work more than six

hours.  (Carnevale Dep. at 164-65 (agreeing that his understanding was that this policy

"comes from a special permit that Stewart's has been granted from the state").  The

fact that Stewart's Shop applied for a permit that allowed it to reduce the meal break

from 30 to 20 minutes, in part for the purpose of "keeping good customer service,"[59]

suggests that the demands of customer service made it generally difficult for its

clerk/cashiers to take uninterrupted meal breaks of any significant duration.  The vast

majority of the 50 declarations of current Stewart's Shops employees submitted by

defendant made the same statement, which does not address whether they were

generally able to take their meal breaks:  "I understand that I am entitled to a meal

break if I work more than a six (6) hour shift.  Whether or not I choose to take a meal

break, I was always compensated for all for the time that I was working at Stewart's."

(*See, e.g.*, Breason Decl. ¶ 14; Green Decl. ¶ 15)  Only nine of defendant's employee

declarants made more definitive statements that they regularly took meal breaks, and

even those statements did not specify whether their breaks were uninterrupted by

---

[59] (*See* 2d Am. Compl., Third Cause of Action, ¶ 105 (quoting defendant's Employee
Handbook)).

73

work.[60]

There is a significant risk that the liability determination on plaintiffs' meal break claim could ultimately require more individualized or store-by-store analysis of which employees had the opportunity to take an uninterrupted meal break given competing work demands.[61]  However, as noted above, the critical legal issues relating to liability on the meal-break claim are subject to class-wide determination.  Based on the evidence currently before the court, I conclude that the inability of Stewart's Shops clerk/cashiers to take uninterrupted 20-minute meal breaks was a sufficiently pervasive problem that the key legal and factual issues relating to liability on the meal-break claim that are amenable to class-wide determination will predominate over issues requiring individualized analysis.  Based on the authority set forth in Section IV D, above, with respect to the call-in pay claim, the court's finding on the predominance issues would also indicate that a class action is currently the superior method for adjudicating this common-law claim.

---

[60] (Doran Decl. ¶ 14 ("I take all my meal breaks"); Becker Decl. ¶ 15, Dkt. No. 72-1 at 53 ("I always take a meal break"); Cummings Decl. ¶ 14, Dkt. No. 72-1 at 75 ("I always take a meal break"); Fishlock Decl. ¶ 14, Dkt. No. 72-1 at 102 ("I always take my meal breaks"); Greene Decl. ¶ 13, Dkt. No. 71-2 at 112 ("I always take my meal break"); Harwood Decl. ¶ 14, Dkt. No. 71-2 at 115 ("I always take a meal break"); Husfelt Decl. ¶ 15, Dkt. No. 71-2 at 126 ("I always take my meal breaks"); Rundberg Decl. ¶ 14, Dkt. No. 71-3 at 27 ("I always take my meal breaks"); Wade Decl. ¶ 15, Dkt. No. 71-3 at 52 ("I always take a meal break during every shift lasting approximately 15 to 20 minutes")).

[61] If continuing discovery provides evidence of more significant individualized or store-by-store variations, that can be addressed in connection with a de-certification motion.

### C.    Ascertainability

Plaintiffs propose a subclass for the meal break claim as those non-exempt employees who "have suffered as a result of defendant's breach of its promise to give paid breaks to its employees."  (Pl.s' Br. at 2).  Based on the authority discussed above, this class definition raises issues of ascertainability because it is defined in terms of a legal injury,[62] and may be "unworkable" because "the class definition depends upon a legal determination that has not yet been made."[63]  However, the court concludes that the definition of this subclass can be modified in terms of more objective criteria without making it overly broad.  The court will recommend certifying a subclass of "any non-exempt employee for defendant in one of its convenience stores located in the State of New York in the past six years who worked a shift of six hours or more, and was unable to take an uninterrupted 20-minute meal break.[64]

**WHEREFORE**, based on the findings above, it is

**ORDERED** that plaintiffs' motion for conditional certification of a collective action under the Fair Labor Standards Act (Dkt. No. 63) is **GRANTED** with respect to

---

[62] See, e.g., *In re: Libor-Based Fin. Instruments Antitrust Litig.*, 2016 WL 2851333, at *2; *In re Amaranth Nat. Gas Commodities Litig.*, 269 F.R.D. 366, 374, 381-82 (S.D.N.Y. 2010) (modifying the proposed class by removing the reference to the class member being "damaged" in connection with certain purchases of securities).

[63] *de la Cruz v. Gill Corn Farms, Inc.*, 2005 WL 5419056, at *6.

[64] Again, the court recognizes that feedback from the parties, in response to this recommendation, might suggest a different modification of this definition of this subclass.

the following "similarly situated individuals":

> all persons who work or have worked as a non-exempt, full-time employee (working 30 or more hours per week) for Stewart's Shops Corporation in one of its convenience stores in the past three years and who, including time worked off the clock, have worked forty or more hours in a week and have been deprived of overtime compensation.

Unless either party files a timely appeal of this order, the parties are directed (a) to meet and confer with respect to (i) the manner and form of notice, and (ii) the production, by defendant, of a list, in electronic format, containing the names, dates of employment, last-known contact information, and other necessary information with respect to potential members of the above-described collective, and (b) to submit, to this court, a joint proposal with respect to notice within 30 days of the date of this order.[65]

   **RECOMMENDED**, that, plaintiffs' motion to certify a class action under Fed. R. Civ. P. 23(b)(3) (Dkt. No. 63) be **GRANTED IN PART,** with respect to the claims and subclasses set forth below:

> any non-exempt employee for Stewart's Shops Corporation in one of its convenience stores located in the State of New York in the past six years who
>    (a)  attended a store meeting that was not scheduled during one of the employee's regular work shifts for that week and who was not paid for a minimum of three hours at their applicable wage rate or
>    (b)  worked a shift of six hours or more, and was unable to take an uninterrupted 20-minute meal break.

---

[65] If the parties can not reach an agreement with respect to the manner and form of notice and the production of related information about members of the collective, they shall submit their respective proposals to the court within 30 days of the date of this order.

It is further **RECOMMENDED** that plaintiffs' motion to certify a class action under Fed. R. Civ. P. 23(b)(3) with respect to other proposed claims and subclasses be **DENIED**.

**RECOMMENDED**, that E. Stewart Jones Hacker Murphy, LLP, be appointed class counsel pursuant to Fed. R. Civ. P. 23(g) with respect to any claims and subclasses ultimately approved.

**RECOMMENDED**, that, within 30 days of any order certifying a class action in this case pursuant to Fed. R. Civ. P. 23(g), the parties submit either a form notice acceptable to both parties, or, alternatively, counter-proposals for the language of such a notice

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**
*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72.


Dated: July 8, 2016


**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**