UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HOLLY GREGORY, MATTHEW POTTER,
and ASTRID HALTEN, individually and
on behalf of all others similarly situated,

                        Plaintiff,
    -against-                                  Civil Action No.
                                                      7:14-cv-00033-TJM-ATB

STEWART'S SHOPS CORP.,

                        Defendant.
_____

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT AND APPROVAL OF PROPOSED NOTICE OF SETTLEMENT**

1

## PRELIMINARY STATEMENT

Plaintiffs Holly Gregory, Matthew Potter and Astrid Halten (collectively, "Plaintiffs or "Named Plaintiffs") and Defendant Stewart's Shops Corp. ("Stewart's" or "Defendant") have agreed to settle this class and collective action brought under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

The proposed settlement satisfies all of the criteria for preliminary approval for the reasons set forth below, and the Court will have a final opportunity to assess the fairness of the settlement and the request for attorneys' fees in connection with the anticipated motion for final approval and the final approval hearing. In addition, the proposed settlement satisfies all of the criteria for approval of the settlement of the FLSA claims of the Named Plaintiffs and the Opt-in Plaintiffs (as defined herein).[1] Accordingly, the Parties respectfully request that the Court: (1) grant preliminary approval of the Joint Stipulation of Settlement and Release (the "Stipulation of Settlement"), attached hereto as Exhibit 1; (2) approve the Notices of Proposed Collective and Class Action Settlement and Final Settlement Approval Hearing (the "Notices") (attached as Exhibit 2) and direct their distribution as provided by the Stipulation of Settlement; (3) approve the Propose Claim Form attached hereto as Exhibit 3; and (3) approve the use of a Claims Administrator to distribute the Notices and administer the claims process as set forth in the Stipulation of Settlement.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On January 9, 2014, Holly Gregory filed this lawsuit against Stewart's. On April 18, 2014, the Complaint was amended to add plaintiffs Astrid Halten and Matthew Potter. The lawsuit

---

[1] While the Parties recognize that settlement approval for Plaintiffs' FLSA collective action claims are not necessarily subject to all of the same procedural requirements as the remaining Rule 23 Class claim, because the Parties have reached a global settlement of both federal and state claims, the Parties are addressing all such claims collectively in this motion.

2

alleges, in part, that Stewart's did not pay hourly employees required overtime at the rate of time and a half per hour for all hours worked in excess of forty (40) per week as required by the FLSA. Plaintiffs allege that, at times, Stewart's required some of its workers to perform work off the clock both before the start of scheduled shifts as well as after the shift ended. Prior to any motion by Plaintiffs for conditional certification under the FLSA, they filed an additional 32 consent forms by other current and former Stewart's employees who wished to opt into the action.

In addition to the overtime claim discussed above, the lawsuit also alleges, among other state-law claims, that Stewart's did not pay required call-in pay for store meetings in some instances and that, at times, employees were not able to take a twenty-minute paid break for shifts worked of six hours or more.

Throughout the litigation, Defendant has denied all claims in this lawsuit, arguing that it has consistently paid its employees in full compliance with both federal and state law.

Plaintiffs filed a motion for conditional certification of a collective on its FLSA overtime claim, as well as a motion under Rule 23 seeking certification of six different classes under the NYLL. On September 28, 2016, the Court issued a ruling allowing this case to proceed as a collective action under the FLSA and a class action under Fed. R. Civ. P. 23(b)(3) with respect to the following claims and subclasses:[2]

> **FLSA Collective Action:** all persons who work or have worked as a non-exempt, full-time employee (working 30 or more hours per week) for Stewart's Shops Corporation in one of its convenience stores in the past three years and who, including time worked off the clock, have worked forty or more hours in a week and have been deprived of overtime compensation (the "Putative FLSA Collective").
>
> **Rule 23 Class Action:** any non-exempt employee for Stewart's Shops Corporation in one of its convenience stores located in the State of New York in the past six years who

---

[2] The Court denied Plaintiffs' motion for class certification in all other respects, including denial of class certification under Rule 23 with respect to Plaintiffs' NYLL claims for allegedly unpaid overtime, gap time pay, uniform maintenance pay, and insufficient wage notices.

3

(a) attended a store meeting that was not scheduled during one of the employee's regular work shifts for that week and who was not paid for a minimum of three hours at their applicable wage rate (the "Call-in Pay Class"), or

(b) worked a shift of six hours or more, and was unable to take an uninterrupted 20-minute meal break (the "Meal Break Class"). The law firm of E. Stewart Jones Hacker Murphy, LLP was appointed to represent the classes described above. *See* Docket 90.

Subsequently, notice of the FLSA overtime claim was sent to the Putative FLSA Collective, which constituted a group of approximately 1,670 current and former Stewart's employees. Beyond the 32 initial opt-in consents discussed above, during the applicable notice period, 114 additional individuals signed consent forms to opt into the action—resulting in a total opt-in collective of 146 current or former Stewart's employees (collectively referred to herein as the "Opt-in Plaintiffs").

After the FLSA notice period had ended, on September 28, 2017, this Court granted Stewart's motion for summary judgment on the claim related to meal breaks, thereby dismissing the claims of the "Meal Break Class" as a matter of law and leaving only the Rule 23 Call-in Pay Class. Accordingly, the only claims that survived the substantial motion practice in this action are the FLSA claims of the Opt-in Plaintiffs and the NYLL claims of the Call-in Pay Class (also referred to herein as the "Rule 23 Class").

Once the claims in the case had been significantly narrowed through motion practice, the Parties participated in multiple settlement conferences with Magistrate Judge Baxter, including an in-person conference on April 4, 2018, followed by multiple telephonic conferences thereafter.[3]

---

[3] The Parties had also participated in a mandatory mediation session earlier in the litigation—i.e., prior to much of the class discovery and motion practice discussed above—which obviously did not result in a settlement. Thus, the settlement conferences with Judge Baxter were a second attempt by the Parties to resolve the case once substantial discovery and motions had narrowed the claims and putative classes.

4

As a result of these settlement conferences with Judge Baxter, the Parties were able to reach an agreement in principle on settlement terms and the Stipulation of Settlement eventually resulted.

## II.  STANDARD FOR PRELIMINARY APPROVAL

The settlement or compromise of a class action requires district court approval. Fed. R. Civ. P. 23(e); *Amchem Products Inc., v. Windsor*, 521 U.S. 591, 617 (1991). The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks and citation omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *see also* Herbert B. Newberg & Alba Conte, Newberg on Class Actions ("Newberg"), §§ 11.41, *et seq.* (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

In ruling on a motion for preliminary approval of a class action settlement, the district court must determine only whether the proposed settlement is within a "range of reasonableness," such that sending notice to the class is warranted. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("[I]n assessing the settlement, the Court must determine whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation."). If the proposed agreement presents no apparent defects or other indicia of unfairness, then the court should direct that notice of a fairness hearing be given to the class members, where evidence and argument may be presented for and against the proposed settlement. *Staton v. Boeing Co., Inc.*, 327 F. 3d 938 (9th Cir. 2003).

### III. CLASS ACTION SETTLEMENT PROCEDURE

The well-defined class action settlement procedure includes three distinct steps: (1) preliminary approval of the proposed settlement after submission to the court of a written motion for preliminary approval; (2) dissemination of mailed and/or published notice of settlement to all affected class members; and (3) a final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented, including as to proposed fees/costs. *See* Fed. R. Civ. P. 23(e); *see also* Newberg, §§ 11.22, *et seq.* This process safeguards class members' procedural due process rights and enables the court to fulfill its role as the guardian of class interests. *Id.* Through this motion, in addition to preliminarily approving the settlement of the Named Plaintiffs' and Opt-in Plaintiffs' FLSA collective action claims,[4] the Parties request that the Court take the first step – granting preliminary approval of the Stipulation of Settlement, approving the Notices, and authorizing the Parties, through an agreed upon Claims Administrator, to send the Notices to putative Rule 23 Class members and the Opt-in Plaintiffs.

### IV. THE PARTIES' PROPOSED SETTLEMENT

After extensive negotiations, including, inter alia, multiple settlement conferences before Judge Baxter, the Parties have reached an agreement to settle the FLSA and remaining Rule 23 Class, as well as the other non-class claims contained in Plaintiffs' Amended Complaint.

Under the terms of the Stipulation of Settlement, Defendant will be required to establish a settlement fund and will pay a maximum total settlement amount of $675,000.00 to be allocated as follows:

---

[4] Again, because the Stipulation of Settlement involves the global settlement of both FLSA collective claims and the Rule 23 Class claim, whether the FLSA claims are finally resolved under the proposed settlement is contingent on whether the global settlement is ultimately approved by the Court.

6

(1) $100,000.00 to be allocated to the FLSA claims of the Named Plaintiffs and Opt-in Plaintiffs;

(2) the Settlement Claims Administrator's fees and costs (to be determined);

(3) $15,000 to be allocated to service awards to the three Named Plaintiffs ($5,000.00 each);

(4) $225,000.00 to be allocated to Plaintiffs' request for attorneys' fees and costs; and,

(5) all remaining funds after deduction for items 1-4 above, allocated to the claims of the Rule 23 Class, which will be disbursed to class members in accordance with the Stipulation of Settlement on a claims-made basis.

### A.  Releases

The Stipulation of Settlement contemplates the following with regard to releases: All class members who do not timely opt out of the settlement will release all state and local wage and hour claims, as described more specifically in the Stipulation of Settlement. Class members who elect to make a claim will release all federal, state and local wage and hour claims, including FLSA claims, as described more specifically in the Stipulation of Settlement.

### B.  Settlement Claims Administrator and Notice to Class Members

The Parties will agree upon a Claims Administrator to facilitate notice to class members and settlement disbursements. The Claims Administrator will be paid from the fund established by Defendant for the payments required by the Stipulation of Settlement (the "Settlement Fund"). Using Social Security Numbers, addresses, and last-known contact information that Defendant will provide, the Claims Administrator will send out Notices to advise the putative Rule 23 Class members of their rights under the settlement to make a claim, object, opt-out, or do nothing. The Claims Administrator will also send a separate Notice to all of the Opt-in Plaintiffs advising them of the proposed settlement and their rights thereunder. The Claims Administrator will send the

Notices to putative Rule 23 Class members and Opt-in Plaintiffs based upon the timeframe contained within the Stipulation of Settlement.

C.  **Attorneys' Fees and Costs**

Plaintiffs' counsel will submit a separate motion requesting attorneys' fees and reimbursement of costs in the total amount of $225,000.00 to which Defendant does not object. The Court need not decide the attorneys' fees and costs issue now. Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), after all class members have had the opportunity to consider the proposed payments and object to or opt-out of the settlement, Plaintiffs will file a Motion for Final Approval of the Settlement and for Approval of Attorneys' Fees and Reimbursement of Expenses.

V.  **PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE.**

The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998). "In exercising this discretion, courts should give proper deference to the private consensual decision of the parties." *Clark v. Ecolab, Inc.*, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation marks omitted). "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . ." *Id.* (internal quotation marks omitted). This is particularly true where, as here, the Parties have engaged in substantial discovery that has allowed them to thoroughly assess the challenges for each side associated with class certification, the merits, and potential arguments for decertification of any certified class or collective action, including the Plaintiffs' potential inability to recover any judgment, assuming one was entered.

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties.

*Clark*, 2009 WL 6615729, at *3 (citing Newberg § 11.25). To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n*, 627 F. 2d 631, 634 (2d Cir. 1980); Newberg § 11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members) (quoting Manual for Complex Litigation (3d ed.) § 30.41).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) (recognizing that courts rely on adversarial nature of litigated FLSA cases resulting in settlement to confirm fairness). Preliminary approval is the first step in the settlement process. It simply allows notice to issue and for class members to object or opt-out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of class members' input.

### A.   The Settlement is Fair, Reasonable, and Adequate.

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), abrogated on other grounds by *Goldberg v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation," Newberg § 11.25, to determine whether the settlement falls within the range of

possible final approval, or "the range of reasonableness," *id.* at § 11.26, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement. *Id.*

The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Grinnell*, 495 F.2d at 463. In this case, the *Grinnell* factors weigh substantially in favor of ultimate approval of the Stipulation of Settlement, and certainly in favor of preliminary approval.

### 1. Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1).

By reaching a favorable settlement prior to completing class discovery, trial, motions for decertification, further dispositive motions, and appeals, the Parties seek to avoid significant expense, time, and uncertainty and instead ensure recovery for the class and certainty of outcome. "Most class actions are inherently complex, and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), aff'd sub. nom. *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

Although the Parties have already undertaken considerable time and expense litigating this matter, further litigation without settlement would necessarily result in additional expense and delay. Absent a settlement, the Parties would have conducted additional discovery, including depositions, and Defendant would likely have moved, if necessary, for decertification of both the

FLSA collective and the Rule 23 Class, as well as for summary judgment on the remaining claims, each at significant cost to the Parties. If these motions were denied, a complicated trial would be necessary, featuring extensive testimony by Stewart's supervisors and employees, Plaintiffs and class members, and expert testimony. Preparing and putting on evidence on the complex factual and legal issues at such a trial would consume tremendous amounts of time and resources for both sides, as well as requiring substantial judicial resources to adjudicate the dispute. A trial of the damages issues, even if it could be done on a representative basis (a concept that Defendant has consistently rejected), would be costly and would further defer closure. Any judgment would likely be appealed, thereby extending the duration of the litigation. The settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

    2. <u>**The Reaction of the Class Is Likely To Be Positive (*Grinnell* Factor 2).**</u>

Notice of the settlement and its details has not yet issued to the putative class and collective members. The Court should more fully analyze this factor after notice of the settlement issues and class members are given the opportunity to opt out or object. At this early stage in the process, however, given that the Plaintiffs have agreed to the terms of the settlement, this factor weighs in favor of preliminary approval.

    3. <u>**Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).**</u>

Although preparing this case through trial would require many more hours of discovery work for both sides, the Parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Warfarin*, 391 F.3d at 537. "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive

11

effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotation marks omitted).

The Parties' discovery to date clearly meets this standard. The Parties have exchanged extensive written discovery, including voluminous timekeeping and payroll data, consisting of tens of thousands of documents, for putative class members. Defendant deposed the Named Plaintiffs pursuant to the phased discovery schedule, and Plaintiffs took the deposition of a Stewart's corporate representative. Moreover, the Parties have discussed at length, through the course of several court conferences with Judge Baxter, among other informal discussions, the risks associated with their respective positions. Against this backdrop, the third *Grinnell* factor favors preliminary approval.

### 4. Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5).

Although Plaintiffs believe their case is strong, it is inherently subject to considerable risk as to liability, damages, and recovery. Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotation marks omitted).

Plaintiffs face both factual and legal hurdles which present substantial risk, including, among others, whether they could demonstrate that the time-keeping records of Stewart's establish violations of federal and state wage and hour rules. As this Court is aware, the timekeeping records of Stewart's are paper based, requiring significant expense and effort to interpret, record, and analyze the documents. In this regard, Defendant has consistently maintained throughout this

12

action that its timekeeping practices and policies are in full compliance with both federal and state law.

Plaintiffs' counsel is experienced and realistic and understands that the resolution of factual and liability issues, the outcome of trial, and the inevitable appeals process are inherently uncertain in terms of outcome, expense, and duration. The proposed settlement alleviates these uncertainties. This factor therefore weighs heavily in favor of preliminary approval.

### 5. Establishing a Class and Maintaining It Through Trial Would Be Difficult (*Grinnell* Factor 6).

As described above, in this case, Plaintiffs have obtained limited class and conditional certification. On the other hand, Stewart's has successfully defeated class certification on a majority of Plaintiffs' other claims under Rule 23 and has maintained throughout this litigation that neither the FLSA collective nor the sole remaining Rule 23 Class is workable and has been very clear about its intention to seek decertification of both, as well as summary judgment, after the lengthy discovery process is concluded. The risk associated with this, as well as maintaining any such certification through trial, would be substantial. Stewart's has identified numerous individualized fact inquiries that could weigh against a manageability finding sufficient for maintaining certification of the remaining Rule 23 Class. Risk, expense, and delay permeate the class certification process generally, and in this case particularly. Settlement eliminates any such risk, expense, and delay. Accordingly, this factor favors preliminary approval.

### 6. Defendants' Ability to Withstand a Greater Judgment Is (*Grinnell* Factor 7).

In light of the other factors discussed herein, including but not limited to the risks associated with the potential decertification of the FLSA collective and Rule 23 Class, the Parties believe that the amount of the Settlement Fund established here is fair and reasonable—regardless

13

of whether Defendant could withstand a greater judgment.[5] Accordingly, this factor favors preliminary approval.

### 7. The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Stewart's has agreed to settle this case for a substantial amount. The settlement amount represents a fair value to the putative class members given the attendant risks of litigation.[6] "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455. "It is well settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Cagan v. Anchor Sav. Bank FSB*, 1990 WL 73423 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

---

[5] While the Parties have not engaged in discovery regarding Defendant's assets, it is worth noting that, to the extent that a judgment considerably greater than the proposed settlement amount were entered in this case, any collection efforts by Plaintiffs could potentially be complicated by the fact that Stewart's is an employee-owned business.

[6] In this regard, if the sole remaining Rule 23 Class were ultimately decertified (as Defendant believes it would be), the potential value of Plaintiffs' case would drop significantly—as the only claims left would be the overtime claims of the Opt-in Plaintiffs under the FLSA and the individual claims of the three Named Plaintiffs. Thus, guaranteeing a significant pool of settlement money for the Rule 23 Class through the proposed settlement has substantial value.

Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable and represents a fair value to class members such that preliminary approval is warranted.

The *Grinnell* factors all weigh in favor of granting preliminary approval of the settlement. In the unlikely event that a substantial number of objectors come forward with meritorious objections, the Court may reevaluate its determination. Because the settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

### B. The Settlement Complies with All of the Requirements of Rule 23(e)(2).

Recent amendments to Rule 23 set forth specific factors for the Court to consider in making the ultimate determination, after a hearing, that a settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). These factors include whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal, the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, the terms of the proposed attorneys' fee award, including timing of payment, and the contents of the proposed settlement agreement; and (D) the proposal treats class members equitably relative to each other. For many of the same reasons discussed above, the proposed settlement in this case satisfies all of these requirements.

#### 1. The Class Representatives and Class Counsel Have Adequately Represented the Class (Rule 23(e)(2)(A)).

As noted above, the Court has already issued a ruling in this case appointing the law firm of E. Stewart Jones Hacker Murphy, LLP to represent the Rule 23 Class. *See* Dkt. 90. Moreover,

Plaintiffs' counsel has spent more than five years litigating this case on behalf of the Named Plaintiffs and Opt-in Plaintiffs and, thus, is uniquely positioned to evaluate both the merits of the case and the benefits of the settlement to the Rule 23 Class.

### 2. The Settlement Was Clearly Negotiated at Arm's Length (Rule 23(e)(2)(B)).

As the Court is well aware, this action has been contentiously litigated on both sides for more than five years now through substantial discovery and multiple layers of motion practice on both the substantive claims asserted and class certification issues. In addition, as noted above, the proposed settlement was reached after multiple settlement conferences—first before a neutral mediator and then before Magistrate Judge Baxter. The Parties respectfully submit that there can be no doubt that the proposed settlement was the product of arm's length negotiations in the context of a long-standing, adversarial litigation.

### 3. The Relief for the Class Is Adequate (Rule 23(e)(2)(C)).

For many of the same reasons discussed above in evaluating the proposed settlement in light of the *Grinnell* factors established by the Second Circuit, the Parties respectfully submit that the substantial relief made available to the Rule 23 Class is plainly adequate. *See* Section V(A)(1-7) above.

### 4. The Proposed Settlement Treats Class Members Equitably Relative to Each Other (Rule 23(e)(2)(D)).

A review of the settlement allocation structure set forth in the Stipulation of Settlement makes it clear that putative members of the Rule 23 Class are being treated equitably relative to each other. Quite simply, this is because the level of recovery available to any putative class member is entirely dependent on the equitable factor of her or his time employed in a relevant

position, which will be determined solely by the pre-existing employment records maintained by Stewart's.

## VI. THE NOTICE PLAN AND AWARD DISTRIBUTION PROCESS ARE PROPER.

The content of the Proposed Notices to the Opt-in Plaintiffs and Rule 23 Class, which are attached as Exhibit 2, fully complies with the requirements of due process and Rule 23. Pursuant to Rule 23(c)(2)(B), a notice must provide:

> the best notice [] practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort . . . . The notice must clearly and concisely state in plain, easily understood language:
>
> (i) the nature of the action;
>
> (ii) the definition of the class certified;
>
> (iii) the class claims, issues, or defenses;
>
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
>
> (v) that the court will exclude from the class any member who requests exclusion;
>
> (vi) the time and manner for requesting exclusion; and
>
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Proposed Notices here satisfy each of these requirements. Additionally, they describe the terms of the settlement and provide specific information regarding the date, time, and place of the final approval hearing, how to make a claim, how to object, and how to opt-out, and also details the proposed award for attorneys' fees and costs. Courts have approved class notices even when they provided only general information about a settlement. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"); *see also Johnson*, 2011 WL 1872405, at *3.

The detailed information in the Proposed Notices far exceeds this bare minimum and complies with the requirements of Rule 23(c)(2)(B).

## VII. CAFA NOTICE

Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(b) ("CAFA"), within ten (10) days after the Parties file this joint motion for preliminary approval of the Settlement, Stewart's will mail notice of this proposed settlement to the Attorney General of the United States, the Attorney General of the State of New York, and the Attorney General of each other state where members of the Rule 23 Class reside according to the last-known addresses contained in Stewart's records. The Parties intend and believe that these notices will comply with the requirements of CAFA.

## CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court grant this Motion for Preliminary Approval of Settlement and enter an order (1) granting preliminary approval of the Stipulation of Settlement; (2) approving the Notices and direct their distribution as provided by the Stipulation of Settlement; (3) approving the use of a Claims Administrator to distribute the Notice and administer the claims process as set forth in the Stipulation of Settlement; and (4) setting a date for a final approval hearing, which the Parties believe should be scheduled based on the timeline set forth in the Stipulation of Settlement.

Dated: May 17, 2019

E. STEWART JONES
HACKER MURPHY, LLP

/s/_____
David I. Iversen, Esq.
Ryan M. Finn, Esq., of counsel

28 Second Street
Troy, NY 12180
518.213.0115
*Attorneys for Plaintiffs*


JACKSON LEWIS P.C.


/s/_____
William J. Anthony
Vincent E. Polsinelli
Stephanie L. Goutos
18 Corporate Woods Blvd.
Third Floor
Albany, New York 12211
Telephone: (518) 434-1300
Facsimile: (518) 427-5956
*Attorneys for Defendant*


4819-7484-4053, v. 2